## 𝔖taunton

JIM LAING v. COMMONWEALTH OF VIRGINIA.

September 11, 1964.

Record No. 5808.

Present, All the Justices.

*Harvey S. Lutins* (*James L. Warren*, on brief), for the plaintiff in error.

*Francis C. Lee, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

I'ANSON, J., delivered the opinion of the court.

Jim Laing was held to be in contempt[1] for his willful disobedience of an order of the Circuit Court of Giles County, entered on May 25, 1963, ordering him to deliver or cause to be delivered to the sheriff of the county a certain German shepherd dog, known as "Rickey," and his punishment was fixed at four months in jail and a fine of $1,000. We granted Laing a writ of error.

Laing contends that (1) the court below was without jurisdiction to order him to deliver the dog; (2) the evidence adduced at trial shows it was impossible to comply with the court's order; and (3) the evidence was insufficient to hold him in contempt.

Laing concedes that the amount of punishment imposed was within the discretion of the trial judge, and that is not an issue here.

The present contempt proceedings arose out of a judgment entered in the court below on July 28, 1961, wherein it was found that Rickey was a sheep-killing dog and he was ordered to be killed by the sheriff of the county, but a stay of execution was granted in order to allow Laing to apply for an appeal to this Court. We affirmed the judgment of the trial court. *Laing* v. *Commonwealth*, 203 Va. 682, 127 S. E. 2d 142, rehearing denied October 8, 1962; cert. denied by the Supreme Court of the United States January 14, 1963, and petition for rehearing denied on February 18, 1963.

Subsequent to the appellate proceedings the circuit court entered an order directing the sheriff to proceed to execute its judgment of July 28, 1961, but Rickey could not be found in the county.

On April 17, 1963, Laing filed a petition in the court below praying that the dog's life be spared and that he be permitted to keep and maintain "his dog and pet," properly kenneled, at his residence in Giles county. After a hearing, on May 25, 1963, the prayer of the petition was denied, and the court found that Laing had removed the dog from the jurisdiction of the court and had secreted it, and ordered that he forthwith deliver, or cause to be delivered, the dog to the sheriff so that the order of the court of July 28, 1961, might be carried into effect. There were no objections made or exceptions taken to this order.

Laing having failed to comply with the order of May 25, the court issued a rule on June 6, 1963, directing him to appear and show cause why he should not be held in contempt.

At the hearing on the rule, on June 21, 1963, Laing testified that he did not have possession of the dog on May 25, 1963, when he

---

1. § 18.1-292(5), Code of 1950, 1960 Repl. Vol.

was ordered to produce it; that he had given Rickey to another person; and that he had not seen the dog for approximately a year and a half or two years prior to the institution of this contempt proceeding. He further testified that he did not know the whereabouts of Rickey but that he would bring him back if he were permitted to kennel him safely at his home. When asked by the court if he had made any effort to comply with the court's order, he stated that he had not.

The trial court, after hearing this evidence and observing the demeanor of the witness, concluded that Laing had made no effort to comply with its order and had no intention to do so. Thus he was adjudged to be in contempt, but he was given an opportunity to purge himself of contempt by delivering Rickey to the sheriff on or before July 1, 1963. However, he did not avail himself of this privilege and the court entered the final contempt judgment, which is now before us.

Laing concedes that the trial court had jurisdiction over him as a person, but he says that by reason of the failure of an "officer of the law" to take the dog into *custodia legis*, as required by § 29-197, Code of 1950, 1964 Repl. Vol., the circuit court had no jurisdiction of the subject matter and thus his conviction of contempt is void.

The Commonwealth readily concedes that the disobedience of a void order is not contempt. See *Buchanan* v. *Buchanan*, 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688; *Robertson* v. *Commonwealth*, 181 Va. 520, 25 S. E. 2d 352, 146 A. L. R. 966. But it says that the order here was not void and Laing was under a legal duty to comply with it, however erroneous he may have believed the mandate to be. *Robertson* v. *Commonwealth, supra.* We agree with the Commonwealth's contention.

Code § 29-197 provides in part:

" * * * Any warden or other person who has reason to believe that any dog is killing livestock * * * shall apply to a justice of the peace of the county, city or town wherein such dog may be who shall issue a warrant requiring the owner * * * to appear before the trial justice [county court] * * *."

Code § 29-175 provides that "County and municipal courts and circuit courts shall have concurrent jurisdiction for the trial of offenses against game, inland fish, and dog laws of the state."

The quoted language from § 29-197 relates to the place where the warrant may be issued and confers jurisdiction of the subject matter on the county court of the county wherein the dog may be. There

is no language in the entire statute which requires the dog to be in the physical possession or control of the game warden or other person when applying for a warrant requiring the owner of the dog to appear. Nor does the statute require that the court have the actual custody or possession of the dog at the time of the hearing. The purpose of the above quoted portion of the statute is for the court to determine if the dog is a killer of livestock, and the warrant is designed to require the owner or custodian, if known, to appear and make his defense in behalf of the dog, if he is so disposed. See *Laing* v. *Commonwealth, supra,* 203 Va. at p. 684, 127 S. E. 2d p. 144.

The jurisdiction of the circuit court was invoked by Laing on appeal from the county court and again through his petition filed after he had exhausted his remedies in defense of Rickey in this Court and the Supreme Court of the United States.

The record shows that Rickey killed certain sheep in Giles county; that the warrant directing Laing, the dog's owner, to appear before the court was issued on the day the offense occurred; that Laing resided in Giles county, and that the dog was kenneled there except for a short time when he was taken into an adjoining county to be treated for gunshot wounds inflicted by an officer of the law at the time he was seen killing the sheep. Thus proper venue was laid in Giles county and the circuit court had jurisdiction over both the dog and Laing under Code §§ 29-175 and 29-197, and upon it being invoked by Laing on appeal. Moreover, it is axiomatic that when a court acquires jurisdiction of the subject matter and the person, it retains jurisdiction until the matter before it has been fully adjudicated.

Under the agreed statement of facts it was stipulated that Laing was permitted to retain custody of the dog during the pendency of the proceedings. While Laing's actions have shown that taking custody of the dog may be the better course, there is no jurisdictional requirement that this be done under § 29-197.

Laing next says that even if the court had jurisdiction to determine the matter, it is impossible for him to comply with the order as he no longer has the dog, having given up possession of it before the May 25, 1963, order was entered. There is no merit in this contention.

It is true that the inability of an alleged contemner, without fault on his part, to render obedience to an order of court, is a good defense to a charge of contempt. *Butcher* v. *Coats,* 1 Dall. (U. S.) 340, 1 L. ed. 166 (1788); 12 Am. Jur., Contempt, § 72, pp. 438, 439;

Annotations: 22 A. L. R. 1256, 1260, 76 A. L. R. 390, 120 A. L. R. 703. But where an alleged contemner has voluntarily and contumaciously brought on himself disability to obey an order, he cannot avail himself of a plea of inability to obey as a defense to the charge of contempt. *Branch* v. *Branch*, 144 Va. 244, 250, 251, 132 S. E. 303, 305; 12 Am. Jur., Contempt, § 72, pp. 438, 439.

When one shows by his conduct a deliberate and studied effort to disobey a valid order of a court, he subjects himself to punishment for contempt. *Board of Supervisors* v. *Bazile*, 195 Va. 739, 742, 743, 745, 80 S. E. 2d 566, 570, 571.

Laing's testimony shows that he had maintained sufficient control over the dog to make it possible for him to obey the court's order; that he could have returned it to the jurisdiction of the circuit court if he so desired; and that he had no intention of returning the dog to Giles county unless he was given assurance by the court that its order directing the sheriff of the county to kill the dog would be nullified and he be permitted to keep it unharmed. The very fact that, before these contempt proceedings, Laing filed his petition asking that he be allowed to keep "his dog," shows that if he received a favorable decision on his petition he would have been able to bring it back to Giles county. Having the means to return the dog, it was Laing's duty to deliver it when ordered to do so by the court. But even if it was impossible for Laing to deliver Rickey to the sheriff (and the evidence shows otherwise) this was brought about by his own acts in an effort to prevent the execution of the orders of the circuit court of July 28, 1961, and May 25, 1963, and is not a valid defense to the contempt proceedings founded upon his failure to comply with the court's May 25, 1963, order.

There is ample evidence in this record to support the court's finding that Laing willfully and deliberately refused to obey the court's order of May 25, 1963. The record reveals that the court below was patient with Laing and acted fairly and impartially toward him throughout the contempt proceedings by giving him an opportunity to purge himself of contempt, but he refused to do so. Thus, Laing's conviction for contempt was proper and necessary to uphold the dignity and power of the court.

For the reasons stated, the judgment of the lower court is

*Affirmed.*