COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Elder and Annunziata
Argued at Richmond, Virginia


JOHN JOSEPH WARMOUTH
                                        OPINION BY
v.    Record No. 2863-97-2       JUDGE JERE M. H. WILLIS, JR.
                                         APRIL 13, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF POWHATAN COUNTY
                  Thomas V. Warren, Judge

          Michael Morchower; Anthony G. Spencer
          (Morchower, Luxton & Whaley, on briefs), for
          appellant.

          Daniel J. Munroe, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     On appeal from his convictions of aggravated malicious

wounding, in violation of Code § 18.2-51, and statutory burglary

while armed with a deadly weapon, in violation of Code § 18.2-90,

John Joseph Warmouth contends that the trial court erred:  (1) in

admitting the Commonwealth's expert testimony on palm print

identification, (2) in disallowing Warmouth's expert testimony

opposing the Commonwealth's palm print comparison testimony, (3)

in admitting testimony that Warmouth had cut a neighbor's

telephone line soon after the incident, (4) in admitting evidence

that the victim's jewelry and mementos had been damaged several

months earlier, (5) in admitting testimony from a telephone

company repairman that the victim's telephone line had been cut by

someone who knew the exact line configuration, (6) in admitting testimony that Warmouth had told friends where the spare key to the house was kept, (7) in holding the evidence sufficient to support Warmouth's convictions, (8) in abusing its discretion by denying defense counsel access to defense witnesses before they testified, and (9) in failing to order a mistrial following improper argument by the Commonwealth's Attorney.  For the reasons set forth herein, we reverse and remand for a new trial, if the Commonwealth be so advised.[1]

## I.   BACKGROUND

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Mary Ann Worsham and John Joseph Warmouth were divorced in 1995.  During their subsequent tumultuous relationship, Warmouth slammed his hand through a glass door when Worsham informed him she planned to date while they were separated, threatened Worsham with a gun, and told her "if I don't like what's going on . . . in the future, I'll kill you and whoever you're with." In January 1996, Worsham discovered some of her jewelry was broken, some was missing, and a photograph of her and Warmouth

---

[1] Because we reverse and remand for evidentiary reasons, we do not address the sufficiency of the evidence.

had been smashed. In April 1996, Worsham called the police to force Warmouth to leave her house.

On July 23, 1996, Worsham put her children to bed, locked the doors, and retired to sleep. Sometime later, she was brutally beaten in her bed, rendering her comatose and causing her permanent injury. She remembers nothing about the incident or her attacker.

When investigating the crime scene, the police observed that the telephone line serving an extension to Worsham's bedroom had been cut. This line had been installed by Warmouth. A bloody handprint impression was found on Worsham's bed sheet. There was no evidence of forced entry. Warmouth retained a key to the house, and he knew that a spare key was hidden in a "fake rock" near the front door. No other physical evidence suggested the identity of the attacker.

During questioning by police, Warmouth became agitated when told that Worsham would soon be able to answer questions.

## II. EVIDENTIARY ISSUES

### A. Robert Hallett's Testimony

The Commonwealth called as a witness Robert Hallett, a forensic scientist, who testified as an expert in the field of impression comparison. Over Warmouth's objection, Hallett testified that he had compared the bloody handprint found on Worsham's bed sheet with a known handprint taken from Warmouth

and had found them similar. He described his comparison of the prints, identifying numerous points of similarity. He testified that the similarity between the prints did not identify Warmouth as the person whose handprint was on the bed sheet, but merely established that the print could have been made by Warmouth's hand. He testified that Ms. Worsham's hand could not have left the print.

Warmouth challenged Hallett's qualifications and the reliability of impression comparison. He argued that Hallett's conclusions were not sufficiently specific to have probative value.

The trial court made a proper threshold determination of Hallett's qualifications in his discipline and as to the reliability of impression comparison. The record supports its determination that both were sufficient. See Spencer v. Commonwealth, 238 Va. 295, 313, 384 S.E.2d 785, 796 (1989), cert. denied, 110 S. Ct. 1171 (1990).

Although Hallett's determinations did not identify Warmouth specifically as the person whose handprint was on the bed sheet, by identifying similarity between that print and Warmouth's, and by excluding Ms. Worsham as a person who could have left the print, Hallett's conclusions addressed and shed light upon the identification of the depositor of the print. His conclusions fell into the same category as footprint, fiber, and substance

analysis.  Information that sheds light upon an issue at trial is relevant.  See Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988).  The trial court did not err in admitting Hallett's testimony into evidence.

B.  Robert Hazen's Testimony

Hazen identified himself as an expert in fingerprint identification but not as an expert in impression comparison. He did not refute Hallett's findings that the handprint on the bed sheet was similar to Warmouth's handprint and that Worsham could be excluded as the maker of the print, because he had not himself analyzed the impressions.  Warmouth sought to have Hazen testify that impression comparison was scientifically unsound and unreliable.  The trial court rejected that testimony.  We find no error in that ruling.  Hazen was not qualified as an expert in the field of impression comparison and, thus, could not render an expert opinion in that discipline.  Furthermore, the scientific reliability of impression comparison related to the admissibility of Hallett's testimony.  The trial court had already considered that question and had ruled on it.  See Spencer, 238 Va. at 313, 384 S.E.2d at 796.

C.  Testimony of Wendy and Joseph Hodges

Over Warmouth's objection, Wendy and Joseph Hodges testified that on the night of August 5, 1996, about two weeks after the attack on Ms. Worsham, Warmouth came to their home,

saying that his vehicle had broken down and he needed assistance.  Mr. Hodges went to get dressed.  When he returned to the door, Warmouth was gone.  Shortly thereafter, Mr. and Mrs. Hodges found that their telephone line had been cut.

Warmouth contends that the Hodges' testimony was irrelevant and highly prejudicial.  We agree.  While the incident described by the Hodges supported the inference that Warmouth had cut their telephone line, the evidence established no connection between this incident and the attack on Ms. Worsham.  The trial court erred in admitting the Hodges' testimony.

D.  Broken Picture Frame and Missing Jewelry

Over Warmouth's objection, Ms. Worsham testified that, in January 1996, she returned home to discover that a picture frame, enclosing a picture of herself and Warmouth, had been shattered, some of her jewelry was damaged, and several pieces of jewelry that Warmouth had given her were missing.  Not only was this incident remote in time, but no evidence linked it to Warmouth.  Thus, this evidence was irrelevant and should not have been admitted.

E.  Gene Bradbury's Testimony

Gene Bradbury, a telephone repairman employed by Bell Atlantic, testified that only a person with prior knowledge of Ms. Worsham's house wiring could have known which wire to cut in order to disable the telephone service to her bedroom.  Warmouth

had installed the extension.  Bradbury's testimony was probative as to whether Warmouth cut the wire and, therefore, was properly admitted.

F.  Matthew Bennett's Testimony

Gordon Batterson, testifying as a witness for Warmouth, denied telling Matthew Bennett that Warmouth had told him where the spare key to Ms. Worsham's house was hidden.  Bennett, called as a rebuttal witness by the Commonwealth, testified that the conversation occurred.  This was purely rebuttal testimony, responsive to an issue injected by Warmouth, and was properly admitted.  Warmouth sought no limiting instruction.

III.  COUNSEL'S ACCESS TO WITNESSES

At the commencement of the trial, on Warmouth's motion, the trial court ordered the witnesses sequestered.  The trial court instructed the Commonwealth's witnesses as follows:

> I do not want you to discuss anything at all
> with any of the three attorneys involved in
> the case.  From here on, you are off limits
> to the attorneys.

The trial court instructed the defense witnesses as follows:

> Do not discuss the case at all in any way
> with the attorneys involved in the case.

Warmouth did not object to those instructions.

After the trial began, two defense witnesses, Robert Hazen and Lawrence Farmer, arrived at the courthouse from out of town. Citing its sequestration ruling, the trial court refused to

allow defense counsel to talk with these witnesses.  Warmouth

contends that this ruling violated his Sixth Amendment right to

assistance of counsel.

> The purpose of excluding the witnesses from the courtroom is . . . to deprive a later witness of the opportunity of shaping his testimony to correspond to that of an earlier one.  Wigmore on Evidence, 3d Ed., Vol. VI, Sec. 1838, p. 352.  While usually all persons come within the rule of exclusion, the authorities agree that the court, in the exercise of its sound judicial discretion, may make exceptions thereto.  In the absence of a showing that there has been an abuse of such discretion, or that the accused was prejudiced thereby, such ruling will not be reversed on appeal.

Huddleston v. Commonwealth, 191 Va. 400, 405, 61 S.E.2d 276, 279

(1950).

> Orders excluding witnesses during the taking of testimony play an important part in our system of justice and should be enforced.  However, if their enforcement is to work justice and not injustice, care must be taken by the trial courts and by counsel to insure that those orders are plainly announced and that their effect is made clear to all [parties involved].

Jury v. Commonwealth, 10 Va. App. 718, 722, 395 S.E.2d 213, 216

(1990).

The trial court ordered the sequestration of witnesses on

Warmouth's motion.  While its admonition against communication

between counsel and the witnesses went beyond the safeguards

necessary to effect the sequestration rule, Warmouth did not

object.  Those admonitions were plainly stated.  In seeking permission to speak with the witnesses, Warmouth's counsel offered no explanation as to why he had not conferred with the witnesses earlier, as to why he needed to confer with them during trial, or as to what prejudice, if any, would be caused Warmouth's defense by denying him access to the witnesses.  No such explanation or showing of prejudice appears from the record.

Witness preparation is a vital part of counsel's assistance to the defendant.  "[A]n accused has the unqualified right to 'call for evidence in his favor.'  This includes the right to prepare for trial which, in turn, includes the right to interview material witnesses and ascertain the truth."  <u>Bobo v.</u> <u>Commonwealth</u>, 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948) (decided under Section 8, Article I of the Virginia Constitution, which affords protections identical to the Sixth Amendment of the United States Constitution).

The exercise of sound judicial discretion requires that an accused be afforded a reasonable opportunity to prepare and present his case.  Upon a showing of proper cause, this principle requires a trial court, with proper admonition, to afford counsel access to witnesses who have not yet begun to testify.  However, in the absence of a showing of proper cause or of prejudice that would result from a denial of access, we

find no reversible error in the trial court's denial of access in this case.

Warmouth argues that the denial of access to the witnesses impaired his counsel's ability to represent him effectively and was thus a denial of his Sixth Amendment right to counsel.

> [In] determining whether counsel's legal assistance to his client was so inadequate that it effectively deprived the client of the protections guaranteed by the Sixth Amendment . . . the "benchmark . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." More specifically, a defendant must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense."

Perry v. Leeke, 488 U.S. 272, 279 (1989) (citations omitted). The record reflects no prejudice resulting to Warmouth's defense from the denial of his counsel's access to the witnesses. Warmouth's ability to call the witnesses was not lost. He did, in fact, present them. The record discloses no area of inquiry that was foreclosed and contains no suggestion that defense counsel was hindered in his ability to examine the witnesses fully.

IV.  CLOSING STATEMENTS MADE BY COMMONWEALTH'S ATTORNEY

In his closing argument, counsel for the Commonwealth stated, in part:

> That's what he is hired to [sic] for by the
> defendant to do, to do a masterful job, and
> he did.  And the Commonwealth compliments
> him.  And the masterful job he is designed
> to do and is hired to do is to try to throw
> as many red herrings at you to confuse you,
> to drag things out, to make thing appear
> differently than they really are.  He really
> doesn't want you to concentrate –

Warmouth contends that these remarks about defense counsel were improper.  However, his objection to these remarks was sustained.  He requested no further relief in the form of a curative instruction or a mistrial.  Thus, he has preserved no issue for us to consider.  Because the question may arise on remand, we note that this argument was improper.  It did not address the issues of the case.  On remand, counsel should refrain from such remarks and should address only the elements and issues of the case.

For the reasons stated, we reverse the convictions and remand the case for a new trial consistent with this opinion, if the Commonwealth be so advised.

The judgment of the trial court is reversed and remanded.

<u>Reversed and remanded.</u>