COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Huff, Judges Alston and Russell


MICHAEL TIMMONS

MEMORANDUM OPINION* BY
v.      Record No. 1158-17-4                    CHIEF JUDGE GLEN A. HUFF
                                               FEBRUARY 20, 2018
LILIAN MUTISO


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

(Pamela L. Cave, on briefs), for appellant.  Appellant submitting
on briefs.

(Ryan M. Schmalzle; Beckman Schmalzle Georgelas & Ross,
PLC, on brief), for appellee.  Appellee submitting on brief.


Appellant Michael Timmons ("father") challenges the order of the Circuit Court of

Loudoun County ("trial court") finding him in contempt of court because he denied his son's

visitation with the child's mother, Lilian Mutiso ("mother"), in violation of the trial court's

custody and visitation order.  On appeal, father contends that the trial court erred by (1) refusing

to admit testimony by and a letter from the child's therapist concerning his recommendations for

the child's needs, and (2) finding father in contempt when contrary authority and evidence

existed.  For the following reasons, this Court affirms the trial court's contempt finding.

I.  BACKGROUND

"On appeal, '[w]e view the evidence in the "light most favorable" to the prevailing party

in the circuit court and grant to that party the benefit of "all reasonable inferences fairly

deducible therefrom."'"  T.S.G. v. B.A.S., 52 Va. App. 583, 585, 665 S.E.2d 854, 855 (2008)

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005)). So viewed, the evidence is as follows.

Mother and father were never married but have a minor child together. Pursuant to a custody and visitation order of May 25, 2014, father had primary physical custody of the child while mother had visitation on alternate weeks from Thursday evening after school through Monday morning when the child returned to school. The arrangement also provided that father and mother would evenly divide winter breaks, with father having the first half of the break in even years and mother having the first half in odd years. For the winter 2016–17 break, father was scheduled to have the first half and mother would have visitation with the child beginning on December 28, the midpoint of the break.

Mother exhibited some confusion as to the correct exchange date. In an email to father on December 12, 2016, she indicated her belief that the exchange was set for December 26. Father did not reply to the email. On the actual exchange date, December 28, father arrived to the exchange location at the usual time of 8:00 a.m. He waited there for forty-five minutes for mother to appear, and when she did not, he sent an email to the parties' parental coordinator— but not to mother—indicating that she had not appeared. Father also suggested in the email that he could attend an exchange on December 29, but that it would have to be at 6:45 a.m. so that he could take the bus to work. The parental coordinator advised father to forward that email to mother, and he did so later on December 28.

Mother did not attend the exchange at 6:45 a.m. on December 29 because it was still dark at that time and she "just didn't want to be around [father] in a dark area where there are no witnesses." Instead, she requested that father bring the child to her house that day. Father declined to do so, believing the request to be inappropriate. Father ultimately decided to work from home on December 29, but he did not advise mother of this fact.

- 2 -

On the afternoon of December 29, father received a letter from the child's therapist and counselor, Joaquin Perez, in which Perez recommended that mother have only supervised visitation with the child. Perez is a licensed therapist, but he is not a forensic psychologist and has never been appointed to perform a court-ordered custody evaluation. Although Perez's letter recommended that the parties "[b]egin supervised visitation as soon as possible for [the child's] visits with his mother," it did not explicitly counsel father to violate the court-ordered visitation scheme.

Mother contacted the police later on December 29 in an effort to facilitate the exchange. When a sheriff's deputy arrived at father's home, father advised the deputy that he was not willing to allow mother to have the child at that time. He showed the deputy Perez's letter, which was "one of the bigger driving factors" in his decision not to facilitate an exchange. Father's opinion was that he should not have to participate in an exchange where mother had already missed two exchange opportunities, especially "in light of the letter." Mother ultimately did not have visitation with the child at any point during the winter 2016–17 break.

Mother was next entitled to visitation from the afternoon of Thursday, January 5 through the morning of Monday, January 9, 2017. Father refused mother visitation on this occasion as well, again citing Perez's letter and recommendation as his rationale. Likewise, on mother's scheduled visitation period of January 19 to January 23, 2017, the child was not at the school for mother to pick up. Mother did not have visitation with the child again until March 16, 2017.

The trial court held a hearing on various visitation matters on June 30, 2017, including a rule to show cause why father should not be held in contempt for violating the May 25, 2014 custody and visitation order. During his case-in-chief, father called Perez and sought to have him qualified as an expert. After *voir dire*, the trial court qualified Perez as "a therapist and counselor with respect to children." Mother's counsel objected when counsel for father sought

to have Perez testify as to his recommendation that mother have only supervised visitation of the child. The trial court sustained the objection and found Perez's proffered testimony to be an opinion related to custody, which was beyond the scope of his qualification. The trial court also refused to admit Perez's December 29, 2016 letter to father into evidence because it constituted hearsay and included the already-precluded opinion related to custody. Father sought to rely on Perez's recommendation for supervised visitation as a justification for denying visitation to mother, and testified that Perez had advised him that, as the child's legal guardian, it was appropriate to violate the court's custody and visitation order. Perez, however, testified that he did not counsel violation of a court order; instead, he told father that he "can't tell you what to do" and simply "cited [his] concerns."

After hearing the evidence, the trial court found that father willfully violated the May 25, 2014 custody and visitation order by denying mother visitation during the winter break and during the January visitations. This appeal followed.

## II. STANDARD OF REVIEW

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Reaves v. Tucker, 67 Va. App. 719, 736, 800 S.E.2d 188, 197 (2017) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006)). Likewise, "an adjudication of contempt will be reversed 'only if we find that [the court] abused its discretion.'" Estate of Hackler v. Hackler, 44 Va. App. 51, 64, 602 S.E.2d 426, 432 (2004) (quoting Barnhill v. Brooks, 15 Va. App. 696, 704, 427 S.E.2d 209, 215 (1993)).

Abuses of discretion only occur when "'reasonable jurists could not differ' as to the proper decision." Reston Hosp. Ctr., LLC v. Remley, 63 Va. App. 755, 764, 763 S.E.2d 238, 243 (2014). "This highly deferential standard of review 'necessarily implies that, for some

decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable.'" Id. (quoting Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013)). This Court's deference to the trial court's discretionary decisions is "based on our 'venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" Id. at 765, 763 S.E.2d at 244 (quoting Hamad, 61 Va. App. at 607, 739 S.E.2d at 239).

### III. ANALYSIS

Father raises five assignments of error on appeal, which fall into two categories: challenges to the trial court's rulings excluding evidence of Perez's recommendation that mother have only supervised visitation, and challenges to the trial court's decision to hold him in contempt.

### A. Admissibility of Perez's Testimony and Letter

In his first assignment of error, father contends that the trial court erred in refusing "to consider the letter and/or Mr. Perez's recommendations made regarding the parties' minor son . . . because Mr. Perez is not, specifically, a child custody evaluator." His second assignment alleges an abuse of the trial court's discretion in its refusal "to allow Mr. Perez to testify thoroughly with regard to the minor child's therapy, his therapeutic needs, and his best interests related thereto" pursuant to Code § 20-124.3. His fifth assignment argues that by refusing to admit Perez's letter, the trial court abused its discretion and "limited [father's] ability to prove his justification for the actions he undertook" related to visitation. Because the trial court appropriately limited its consideration of Perez's letter and testimony to the scope of his expert qualification, this Court holds that the trial court's evidentiary rulings were not abuses of discretion.

Virginia Rule of Evidence 2:702(a)(i) provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise" in civil proceedings if that witness' specialized knowledge will assist the trier of fact in determining a fact at issue.

> The general rule is that the opinions of experts or skilled witnesses are admissible in evidence in those cases in which the matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject matter so far partakes of the nature of a science, art or trade as to require a previous habit of experience or study in it to acquire a knowledge thereof. . . . The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when his knowledge of the matter in relation to which his opinion is asked is such, or is so great, that it will probably aid the trier in the search for the truth.

Neblett v. Hunter, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1966). "[T]he question of the qualification of a witness to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness was not qualified." Ames & Webb, Inc. v. Commercial Laundry Co., 204 Va. 616, 621, 133 S.E.2d 547, 550 (1963).

A witness' qualification as an expert extends only to those areas of the witness' special knowledge; "[t]he fact that a witness is an expert in one field does not make him an expert in another field, even though the two fields are closely related." Combs v. Norfolk and Western Ry. Co., 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998) (holding biomedical engineer with some medical training not qualified to opine on cause of disc rupture); see also, e.g., John v. Im, 263 Va. 315, 559 S.E.2d 694 (2000) (holding licensed psychologist not qualified to provide expert medical opinion on cause of brain injury); Warmouth v. Commonwealth, 29 Va. App. 476, 482, 513 S.E.2d 418, 421 (1999) (holding trial court did not err in finding witness qualified as expert in fingerprint identification unqualified to express opinions in the field of impression comparison).

In this case, father sought to solicit Perez's testimony relating to "specific issues" he observed while counseling the child. Following mother's objection, the trial court agreed that Perez needed to be qualified as an expert before continuing. In *voir dire*, the evidence established that Perez held a master's degree in social work, had been a licensed counselor in Virginia for over ten years, had participated in similar cases to the one at bar, but had not performed any "forensic work" in a professional capacity nor had he ever performed a child custody evaluation. Based on this foundation, the trial court qualified Perez as "a therapist and counselor with respect to children."

During father's subsequent direct examination of Perez, counsel inquired "what [Perez's] recommendations were related to therapeutic intervention" for the child. After mother objected, the trial court excused Perez and heard father's proffer that Perez recommended "supervised therapeutic visitation." The trial court ruled "that would be a custody recommendation . . . not within his purview as [the child's] therapist" and thus "is not admissible." The trial court elaborated that Perez was "supposed to be providing therapy for [the child, not] mak[ing] a recommendation with respect to custody. There is a distinction." Later during Perez's testimony, father sought to introduce the December 29, 2016 letter containing Perez's supervised visitation recommendation into evidence. The trial court similarly refused the letter because the recommendation was beyond the scope of Perez's expert qualification.

By Perez's own admission, he had never performed a court-ordered custody evaluation, nor was he asked to do one in this case. He never claimed to be specially qualified in matters of child custody determinations. Although it is undisputed that Perez was an expert in the field of child therapy and counseling, and this field is closely related to determinations of child custody in contentious separation cases, "[t]he fact that [Perez] is an expert in one field does not make

him an expert in another field, even though the two fields are closely related." Combs, 256 Va. at 496, 507 S.E.2d at 358.

Appellant cites Code § 20-124.3 as authority for the trial court's obligation to consider evidence of Perez's recommendation. That statute provides that a trial court considering matters of custody and visitation must assess various factors in determining a child's best interests, including "[t]he age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs." Code § 20-124.3(1). This statutory obligation, however, does not permit a trial court to disregard the rules of evidence. The onus remains on the parties to provide the trial court with competent, admissible evidence with which to discharge its duty of making a best interests determination. Cf. Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) ("The burden is always on the parties to present sufficient evidence to provide the basis on which a proper determination can be made . . . ." (quoting Hodges v. Hodges, 2 Va. App. 508, 516, 347 S.E.2d 134, 139 (1986))). Father had the opportunity to present evidence regarding an alternative custody and visitation arrangement through the testimony of an appropriate expert. "Parties should not be allowed to benefit on review for their failure to introduce evidence at trial." Id. (quoting In re Marriage of Smith, 448 N.E.2d 545, 550 (Ill. App. Ct. 1983)).

Having heard the evidence and reviewed Perez's qualifications, the trial court determined that he lacked the specialized knowledge or training necessary for qualification as an expert on matters of child custody. Accordingly, this Court holds that the trial court did not abuse its discretion in refusing to accept into evidence Perez's testimony or letter recommending that mother have only supervised visitation.

## B. Contempt Finding

In father's third and fourth assignments of error, he contends that the trial court erred in finding him in contempt contrary to the appropriate legal standard and that it "failed to consider the fact that law enforcement . . . did not require the child to be exchanged" after mother called them to father's home. In essence, father's argument is that, as the child's sole legal custodian, he was justified in acting contrary to the May 25, 2014 custody and visitation order based on Perez's recommendation and his obligation to protect the child. Because these reasons are insufficient to justify willful violation of a court order, this Court holds that the trial court did not err in holding father in contempt.

"A trial court 'has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order.'" Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (quoting Carswell v. Matterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982)). In order to prevail in a show cause hearing, "the moving party need only prove that the offending party failed to comply with an order of the trial court." Id. Once the moving party has met this burden, it then shifts to the offending party to prove a justification for the failure to comply. Id.; see also Frazier v. Commonwealth, 3 Va. App. 84, 87, 348 S.E.2d 405, 407 (1986).

> It is true the inability of an alleged [contemnor], without fault on his part, to render obedience to an order of court, is a good defense to a charge of contempt. But where an alleged [contemnor] has voluntarily and contumaciously brought on himself disability to obey an order, he cannot avail himself of a plea of inability to obey as a defense to the charge of contempt. When one shows by his conduct a deliberate and studied effort to disobey a valid order of a court, he subjects himself to punishment for contempt.

Laing v. Commonwealth, 205 Va. 511, 515, 137 S.E.2d 896, 899 (1964).

Father argues on brief that the trial court denied him the opportunity to justify his failure to comply with the court order because it "refused to consider the evidence that formed the sole basis for [his] justification of why he did what he did regarding visitation." He specifically

challenges the trial court's refusal to "allow any of the underlying facts and/or reasons therefore to be explained by the court-ordered therapist who made the [supervised visitation] recommendation, solely, because he was not a custody evaluator." As discussed above, the trial court properly excluded evidence of Perez's recommendation because it was beyond the scope of his role as the child's therapist.

In its oral ruling at the hearing's conclusion, the trial court indicated that Perez's recommendation regarding visitation was improper and could not justify father's violation of the court order:

> [T]he therapist denied saying that he told [father] to violate a Court order however . . . father told the Court that Mr. Perez told him to violate a Court order really concerns me that we have healthcare professionals even intimating that because you're the legal custodian that you can violate a Court order. I don't know what he said or didn't say to you and I don't know how you construed it but it concerns me that if Mr. Perez even got close to crossing that line, he's not someone that should be recommended by any Court to be providing therapy because you don't get to make those decisions.

The trial court considered father's actions in denying mother visitation over the winter break, stating that father's "whole excuse falls apart when the sheriff shows up at the door and you say no, not going. So, that's when it becomes clear that it's willful." After reviewing father's continued denial of visitation to mother during January 2017, the trial court ruled that it was "finding the father also in willful contempt for missing the January visitations."

Whether appellant's actions constituted willful contempt was a matter within the trial court's discretion, Estate of Hackler, 44 Va. App. at 64, 602 S.E.2d at 432, and the trial court had competent evidence before it from which to conclude that father's actions were a willful violation of the May 25, 2014 custody and visitation order. That father's actions were, at least in part, based on an improper recommendation from the child's therapist is of no moment to the analysis because that recommendation had no effect on father's obligation to comply with the

order. Perez's recommendation did not give rise to anything approaching an "inability of [father], without fault on his part, to render obedience to an order of court" and thus was not "a good defense to a charge of contempt." Laing, 205 Va. at 515, 137 S.E.2d at 899. Moreover, father's contention that the trial court failed to consider that law enforcement did not require the exchange to occur is misguided because appellate courts do not reweigh the evidence. See Mayer v. Corso-Mayer, 62 Va. App. 713, 730, 753 S.E.2d 263, 271 (2014); see also Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007) ("As an appellate court, we are not permitted to reweigh the evidence."). Accordingly, this Court holds that the trial court did not err in holding father in contempt.

## C. Attorney Fees

Both parties request attorney fees on appeal pursuant to Rule 5A:30(b). This Court's decisions regarding attorney fees and costs are discretionary and based not only on "a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but . . . all the equities of the case." Rule 5A:30(b)(3); see O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). The case at bar was not frivolous, and instead addressed appropriate issues. Neither party contributed to undue delay or engaged in inappropriate litigation tactics. In light of the equities of this case, this Court declines to award attorney fees to either party.

## IV. CONCLUSION

The trial court properly excluded evidence of Perez's visitation recommendation and did not abuse its discretion in finding that father willfully violated the May 25, 2014 custody and visitation order. Accordingly, this Court affirms the trial court's rulings but does not award appellate attorney fees to either party.

Affirmed.