# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Humphreys and Russell
Argued at Leesburg, Virginia


VERONIKA R. PETROVA

                                         MEMORANDUM OPINION[*] BY
v.       Record No. 0596-19-4        CHIEF JUDGE MARLA GRAFF DECKER
                                            DECEMBER 27, 2019

MAXWELL S. LEACH


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Demian J. McGarry (Curran Moher Weis, P.C., on brief), for
appellant.

Alanna C. E. Williams (The Law Office of Alanna Williams, PLLC,
on brief), for appellee.


Veronika R. Petrova (the mother) appeals the decision of the circuit court awarding

custody of her minor child to Maxwell S. Leech (the father). She challenges the modification of

custody requiring that she submit the child's Bulgarian passport to the circuit court to be eligible

for unsupervised visitation. The mother suggests that in fashioning this order, the circuit court

abused its discretion by failing to prioritize the best interests of the child. She also argues that

the condition was an impossibility at the time of entry of the order. Finally, the mother

maintains that the court erred by ordering her to surrender the child's Bulgarian passport because

the father never requested that relief. The father asks this Court to affirm and to award him

attorney's fees and costs incurred on appeal. For the following reasons, we affirm the decision

of the circuit court. We also deny the father's request for attorney's fees and costs.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND[1]

The mother and father are the divorced parents of minor male child A.L.  In 2016, when A.L. was almost two years old, the circuit court entered a custody and visitation order that granted joint legal and physical custody of the child to the parties and gave the mother final decision-making authority "regarding major decisions involving the child."

In September 2017, A.L. was diagnosed with Lyme disease.  He was initially tested and treated in the United States.  The mother was dissatisfied with the medical treatment provided, and the father eventually agreed that A.L. would accompany the mother's parents to Bulgaria to be treated for the disease during the specified time period from December 13, 2017, to March 2, 2018.

In February 2018, the mother communicated to the father that according to A.L.'s doctor's orders, he needed to remain in Bulgaria for testing.  The father insisted that the mother return A.L. to the United Stated in accordance with their signed agreement.

Despite the father's protest, the mother did not return A.L. to the United States by March 2, 2018, as required by the agreement.  One month later, the father filed a motion in the circuit court seeking the child's immediate return to this country.  The motion was denied due to a lack of evidence about the child's medical condition.  Consequently, A.L. remained in Bulgaria with his grandparents.

On June 7, 2018, the father filed a motion to modify the custody order.  On June 20, 2018, the circuit court held a hearing on the motion.  At that time, A.L. was still in Bulgaria.  The father argued that the mother had used the medical treatment of A.L. as a pretext to send him to

---

[1] In an appeal reviewing the modification of a custody decree, "we view the evidence in the light most favorable to . . . the party prevailing below," in this case the father.  D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335 (2005).

Europe and keep him there indefinitely. He requested that the court find the mother "in contempt of court for withholding [A.L.] from" him. The court found the mother in contempt and remanded her to the custody of the sheriff until A.L. was returned to this country. Further, the court granted the father sole legal and physical custody of the child until a full hearing could be held on the matter. One day later, A.L. was brought back to the United States and was picked up at the airport by the father. At that time the father also "signed" for A.L.'s United States passport. The mother was released from jail the following day.

On February 13, 2019, a hearing was held regarding the parties' competing requests to modify the custody order. At that hearing, the court asked the mother whether A.L. had a second passport. She responded that the child had a Bulgarian passport. When the court inquired whether she had the passport in her possession, the mother said that she did not know the whereabouts of the passport. However, she gave testimony supporting a finding that she saw the passport when A.L. returned to the United States, and the trial court expressly found that she "kn[ew] where the passport [was]" at the time of the hearing. After hearing evidence, the court found a material change in circumstances and concluded that the statutory "best interests" factors supported granting the father sole legal custody and primary physical custody of the child. It ordered that the mother turn in A.L.'s Bulgarian passport to the court by February 15, 2019. Additionally, the court explained that the mother would be granted unsupervised visitation that would begin *after* the Bulgarian passport was surrendered *to the court*.

Contrary to the court's instructions, the mother chose to return A.L.'s passport to the Bulgarian Embassy instead of the circuit court. Accordingly, on February 15, 2019, the court entered an order explicitly instructing that the mother would not have any visitation with A.L. until the Bulgarian passport was in the possession of the court.

During a March 15, 2019 hearing, the mother brought up the fact that she gave the passport to the embassy instead of the circuit court. The judge noted that he understood the passport issue but explained that the problem would not have occurred "if [the mother] had brought the passport [to the court]" as instructed. The judge stated that he did not trust the mother and believed that she would potentially "secret[e]" A.L. out of the country if the Bulgarian passport was not turned in to the court.

The court entered a modified custody order on March 15, 2019. The order stated that the mother would have supervised visitation with A.L. until his Bulgarian "passport [was] in the possession of" the circuit court "or the [c]ourt modifie[d] th[e] [o]rder." Further, the order provided that the mother was prohibited from "attempt[ing] to obtain th[e] passport from the Bulgarian Embassy," from "obtain[ing] a new Bulgarian passport for the minor child," and from "accept[ing] for [A.L.] any Bulgarian passport that someone else m[ight] apply for [on behalf of A.L.]." The court's order explained that once the mother turned in the passport, then she would be permitted to have unsupervised visitation with the child.

## II. ANALYSIS

The mother challenges the decision of the circuit court giving her supervised visitation of her son A.L. and conditioning unsupervised visitation on the submission of the child's Bulgarian passport to the circuit court. She also argues that the condition was an impossibility at the time of entry of the order and went beyond any relief sought by the father.

"In all custody cases[,] the controlling consideration is always the child's welfare," and "in determining the best interest of the child," the circuit court "must consider[] all the facts." Brown v. Brown, 218 Va. 196, 199 (1977) (*per curiam*). Additionally, the Supreme Court has made clear that the "decision of the trial judge is peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than [the appellate

- 4 -

court], which is limited to a review of the written record." Id. at 200. Further, "[b]ecause the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[ ] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." Geouge v. Traylor, 68 Va. App. 343, 347 (2017) (second and third alterations in original) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 44 (2014)).

## A. Supervised Visitation

The mother argues that the circuit court abused its discretion when it imposed the condition that she surrender a foreign passport that had already been surrendered to the foreign entity before she could have unsupervised visitation. She reasons that the "impossible condition" imposed by the court "cannot be reconciled with [Code §] 20-124.2(B)'s mandate of continuing and frequent contact between the parent and child." Further, she maintains that the condition went beyond any relief sought by the father.

### 1. Material Change in Circumstances and Best Interests of the Child

The mother's appeal focuses on the central premise that the circuit court erred by modifying the custody order essentially to allow her only supervised visitation with A.L. She suggests that in doing so, it did not follow the factors set forth in Code § 20-124.3 or prioritize the best interests of A.L. She also contends that the condition that she surrender the Bulgarian passport to the court in order to obtain unsupervised visitation "is without evidence to support it."

It is well established that a circuit court's "determination with regard to visitation is reversible only upon a showing that the court abused its discretion." Stadter v. Siperko, 52 Va. App. 81, 88 (2008). "When a party has filed a petition to modify an existing visitation order, the court[] must apply the Supreme Court's two-pronged test enunciated in Keel v. Keel, 225 Va.

606 (1983), to determine whether modification of that order is proper." Rhodes v. Lang, 66

Va. App. 702, 709 (2016). "That test asks, 'first, has there been a change in circumstances since

the most recent custody award; [and] second, would a change in custody be in the best interests

of the child[].'" Id. (quoting Keel, 225 Va. at 611).

Once the circuit court determines that there has been a change in circumstances, it is

required to examine the ten factors in Code § 20-124.3. Those factors relate to whether the

change in custody would be in the best interests of the child, the second part of the test. See

Artis v. Jones, 52 Va. App. 356, 363 (2008). This Court has previously noted that "'there is no

simple, mechanical, "cut and dried" way' to apply the best interests of the child standard."

Welch, 64 Va. App. at 48 (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the

question must be resolved . . . in light of the facts of each case.'" Id. (alteration in original)

(quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

This case clearly presents a unique set of facts that were squarely before the circuit court.

Here, the court found a material change in circumstances that necessitated a modification in the

parties' custody order. See Rhodes, 66 Va. App. at 709. The court explained that it found that

the change in circumstances was the mother's act of "sending [A.L.] to Bulgaria thereby

depriving the father of several months of visitation," including over three months that came after

the parties' agreed-upon time of return.

The court then went on to address whether the change in custody would be in the best

interests of the child. The court explained its analysis, considering each factor in Code

§ 20-124.3 as it discussed its decision regarding custody and visitation of A.L. The court found

that the mother's decision to keep A.L. in Bulgaria weighed heavily against her with respect to

three factors of the analysis. See Code § 20-124.3(6), (7), (10). It noted that the incident showed

that the mother would not actively support A.L.'s relationship with his father and that she could

- 6 -

not cooperate with him to resolve disputes regarding matters affecting the child. Further, the court believed that the mother's choice to keep A.L. in Bulgaria was such an egregious error in judgment that it required special consideration pursuant to "factor ten" of the statute. See Code § 20-124.3(10) (providing that the court should consider "other factors as [it] deems necessary and proper to the determination").

The mother characterizes the circuit court's "negative findings" as "singularly" focused on her decision to keep A.L. in Bulgaria for over six months. However, contrary to the mother's assertion, the Bulgarian incident represented the "material change in circumstance" that the circuit court found necessitated a modification of the parties' original custody arrangement. The incident was a significant event that justly colored the court's custody decision. Therefore, it is not surprising that the judge focused on the event when he explained his decision to the parties. The judge considered the incident evidence that the mother deprived the father of visitation and was unwilling to work with him to resolve issues related to their child. See Code § 20-124.3(6), (7).

Additionally, significant portions of the parties' discussions during those months were captured in text messages that were introduced into evidence. Those communications further demonstrated the toxic process in which the mother and the father routinely engaged while they negotiated over their son's return.

Ultimately, the court believed that the mother's choice to keep A.L. in Bulgaria for months after she was supposed to return him to the United States evinced bad faith on her part when dealing with the father. The court explained that it was concerned that if the mother had primary physical custody of A.L., "she would send [him] to Bulgaria whenever she felt it was necessary for however long she thought was necessary." Considering that the mother unilaterally extended A.L.'s stay in Bulgaria months past the date upon which the parties agreed

and refused the father's multiple requests to return the child, the court's concern and its finding of a material change in circumstances were supported by the evidence. The circuit court did not abuse its discretion when it ordered the mother to have only supervised visitation with A.L. until the surrendering of his passport to the court.

The mother's second assignment of error suggests that the "[c]ourt erred in subordinating the best interests of the child to the [m]other's compliance with court orders." This argument essentially challenges the weight the circuit court placed on the statutory factors in Code § 20-124.3. As discussed above, we hold that the court acted within its discretion when it modified the parties' custody order.

Additionally, the mother contends that the judge placed the Bulgarian passport condition on her as a punishment for defying an order of the court.[2] However, the record shows that the court imposed the condition to ensure that the mother would not attempt to unilaterally remove the child from the country again, thereby also removing him from his father, rather than to punish her for her defiance.[3] In light of the unusual facts of this case, the circuit court did not err by resolving the issue in this manner.

---

[2] To the extent that the mother argues that the circuit court should have handled this matter through contempt proceedings, that specific argument was not preserved below. See Rule 5A:18; see also Bethea v. Commonwealth, 297 Va. 730, ___ (2019) ("[N]either an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" (quoting Commonwealth v. Shifflett, 257 Va. 34, 44 (1999))). Accordingly, this argument is barred pursuant to Rule 5A:18 and will not be considered on appeal. See Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 315 (2013).

[3] The mother specifically argues that but for her failure to surrender her son's passport, the circuit court's Code § 20-124.3 best-interests-of-the-child analysis concluded that she should have unsupervised visitation with A.L. Accordingly, she suggests that the order reflects that the court improperly weighed her disobedience to it over the best interests of the child. However, the record shows that the court was concerned about the mother's ability to leave the country with A.L., which implicitly would not be in the best interests of the child. To address that concern, it ordered that the child's passport be surrendered to the court. Further, in considering this issue, the court clearly stated that if the mother had not sent A.L. away to Bulgaria for seven months, "[it] could be more flexible. But she's proven . . . what she will do."

2.  Impossibility

The mother further contends that the circuit court erred when it conditioned her ability to have unsupervised visitation with A.L. on the submission of A.L.'s Bulgarian passport to the court.  She argues that this condition was an impossibility at the time the court entered the order because the passport was in the possession of the Bulgarian Embassy.

The inability of a party to comply with an order of court may serve as a defense only when the impossibility occurs without fault of the party.  Johnson v. Johnson, 26 Va. App. 135, 153 (1997); see Laing v. Commonwealth, 205 Va. 511, 514-15 (1964).  However, where that party "has voluntarily . . . brought on" the inability "to obey an order, [s]he cannot avail [her]self of a plea of inability to obey as a defense."  Johnson, 26 Va. App. at 153 (second and third alterations in original) (quoting Laing, 205 Va. at 515).  Further, when a party presents a defense of impossibility to a circuit court, that party bears the burden of proving the elements of the defense.  See Perel v. Brannan, 267 Va. 691, 700 (2004) (considering impossibility as a defense to a claim for specific performance or injunctive relief in a contract dispute).

In this case, the circuit court orally ordered the mother on February 13, 2019, to surrender A.L.'s Bulgarian passport to the court within two days.  The verbal order was made in open court and clearly defined its expectations of the mother.  See generally Shebelskie v. Brown, 287 Va. 18, 30 (2014) (noting that for a litigant to be penalized for violating an order, it "must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied" (quoting Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 707 (2007))); Robertson v. Commonwealth, 181 Va. 520, 537-38 (1943) (explaining that *oral* orders of a trial court must be obeyed and that a party's disagreement with the "propriety of its ruling" is no excuse for disobedience).  The judge explained that the mother would not be permitted to have visitation until the child's passport was turned in to the court.  At

the time the court rendered this order, the mother represented that A.L. still had a Bulgarian passport. Additionally, her attorney represented that the mother was "happy to do" "[w]hatever the [c]ourt want[ed] her to do" with the passport. After the court's verbal order, the mother took the passport to the Bulgarian Embassy. Consequently, the record supports a finding that the mother was aware of the specific mandate yet chose to defy the order by subsequently giving the passport to the Bulgarian Embassy.

In Johnson v. Johnson, this Court dealt in part with a circuit court's finding of contempt against a mother who disobeyed the court's order by filing for custody of her child in Sweden. 26 Va. App. at 142, 153. While the mother in this case was not found in contempt for defying the court's order regarding A.L.'s Bulgarian passport, the guiding principle remains applicable. She may not avail herself of the defense of impossibility because she could have complied with the order yet created the impediment. See id.; cf. Branch v. Branch, 144 Va. 244, 250 (1926) (holding that a circuit court's finding of contempt was appropriate where a party failed to pay alimony "not from inability but unwillingness to pay"). Here, after clearly being informed of all of the potential consequences, the mother willfully chose to defy the court order that she surrender her child's Bulgarian passport *to the court*. Accordingly, she created the impossibility about which she now complains on appeal. Therefore, the defense of impossibility is not appropriate in this case.[4] See Johnson, 26 Va. App. at 154.

_____

[4] We note that the circuit court acknowledged receipt of a letter purportedly from the Bulgarian Embassy indicating that it would be impossible for the mother to retrieve the passport after she had given it to the Bulgarian authorities. However, the court never made any specific findings regarding the accuracy of that assertion. The court included its requirement that A.L.'s Bulgarian passport had to be surrendered to the court before the mother could have unsupervised visitation after it received the correspondence from the Embassy. This suggests that the court did not find the information in the letter to be credible. "[T]his Court cannot re-weigh the evidence or alter the circuit court's credibility determinations." Canales v. Torres Orellana, 67 Va. App. 759, 787-88 (2017) (*en banc*). Moreover, "[t]he determination by a fact-finder in a trial court that a party has failed to sustain its burden of proof or persuasion is not subject to appellate review." Id. at 788; see Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991) ("In

### 3. Relief Requested

Finally, the mother argues that the circuit court's condition that she surrender A.L.'s Bulgarian passport "was not prayed for or sought by the [f]ather at any stage of the litigation." Citing Irwin v. Irwin, 47 Va. App. 287, 298 n.10 (2005), she references the general proposition that "[courts] can only grant relief requested." The mother contends that the father wanted to "maintain the *status quo* of the Agreed Temporary Visitation Order" that was entered in August 2018 and, therefore, the order went beyond any relief that he requested.

The mother's argument ignores portions of the father's testimony at the hearing. On February 13, 2019, he testified that if he was awarded primary physical custody of A.L., he intended to continue to foster his son's relationship with the mother. He also said that he wanted to keep the *status quo* of the visitation schedule that the parties had worked out after the temporary visitation order was entered by the court in August 2018. However, the father specifically asked for "final decision-making authority" and possession of A.L's United States passport to avoid another "Bulgaria incident."[5] Further, it is clear that the father remained concerned that the mother would make it difficult for him to see his son if she was granted primary custody and that she might again remove the child from the United States. He testified that he "struggled to maintain rights to see [his] son" and that "[it had] been a constant divide and . . . very difficult."

---

determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.").

[5] Additionally, we note that the father asked the court to order the mother to surrender A.L.'s passport to the court in his June 7, 2018 motion to modify custody. It is unclear whether this request referred to A.L.'s United States passport or his Bulgarian passport. However, this request reinforces that the father was concerned that the mother might again take the child out of the country and wanted the court to have possession of the document to safeguard against any future problems.

While the father did not specifically ask for A.L.'s *Bulgarian* passport, he made clear that he was concerned about the mother's ability to take A.L. out of the country without his consent. This concern was obviously shared by the judge, who chose to address that concern by ordering that the mother surrender the child's Bulgarian passport to the circuit court. This order was a mechanism employed by the judge to prevent any further attempt of the mother to remove the child from the United States. Plain and simple, the order addresses the concerns that the father presented to the court during the hearing and that the court shared based on the evidence before it. Consequently, the condition did not exceed the scope of the court's authority. See Leisge v. Leisge, 224 Va. 303, 309-10 (1982) (commenting that the circuit court "was attempting to fashion a remedy to comport with the exigencies of the [custody enforcement] case before it" and holding that the court did not "abuse its discretion").

## B. Attorney's Fees

The father seeks an award of attorney's fees and costs incurred on appeal. Pursuant to Rule 5A:30, in specified cases in which attorney's fees are recoverable under Title 20 of the Code of Virginia, the Court of Appeals may award some or all of the fees requested or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(b)(1), (2). However, whether to award fees and costs is discretionary. See Rule 5A:30(a), (b). In determining whether to make such an award, the Court may consider factors including whether the requesting party has prevailed, whether the appeal was "fairly debatable" or frivolous, and whether other reasons exist to support an award of attorney's fees and costs. See Rule 5A:30(a), (b)(3), (b)(4); Brandau v. Brandau, 52 Va. App. 632, 642 (2008); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). In addition, Rule 5A:30(b)(3) specifically directs this Court to "consider all the equities of the case."

In light of all the factors set out in Rule 5A:30, the applicable case law, and a review of the record, we conclude that the mother's argument in this appeal was not frivolous. Accordingly, in the exercise of our discretion, we decline to award attorney's fees and costs to the father. See, e.g., Wright v. Wright, 61 Va. App. 432, 470 (2013).

### III. CONCLUSION

We hold that the circuit court acted within its discretion when it ordered that the mother be limited to supervised visitation with A.L. until she surrendered the child's Bulgarian passport to the court. The condition was not an impossibility when the circuit court first ordered it orally in open court. Thus, we further hold that any subsequent impossibility was brought on by the mother herself and consequently did not provide her with a defense to disobeying the court order that required her to surrender the passport. Further, this condition clearly addressed the father's concern that the mother would attempt to take the child out of the United States. Last, in the exercise of our discretion, we decline to award the father attorney's fees and costs.

Affirmed.