COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick,[*] Judges Elder and Annunziata
Argued at Richmond, Virginia


ANNE FRANZEN JOHNSON
                                   OPINION BY
v.   Record No. 2200-96-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                  DECEMBER 9, 1997
THOMAS ARTHUR JOHNSON


           FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                      Donald M. Haddock, Judge

          Richard E. Crouch (John Crouch; Crouch &
          Crouch, on briefs), for appellant.

          James Ray Cottrell (Christopher W.
          Schinstock; Gannon, Cottrell & Ward, P.C., on
          brief), for appellee.


     Anne F. Johnson (mother) appeals the trial court's decision

granting sole custody of Amanda Johnson (child) to Thomas A.

Johnson (father).  Mother argues that the trial court erred in:

(1) finding that it had jurisdiction to modify its prior custody

order; (2) refusing to defer the exercise of jurisdiction over

the custody of Amanda to the Swedish courts; and (3) finding

mother in contempt.  We hold that the trial court properly

exercised its jurisdiction and affirm.

                        I.  BACKGROUND

     Father is an attorney with the United States Department of

State, and mother is an attorney with the Swedish Ministry of

Foreign Affairs.  The parents met in Switzerland and were married

---

[*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

on December 6, 1986.  Their only child was born in Switzerland on November 11, 1987.  In 1990, father was posted to Washington, D.C. and moved to Virginia, and mother was posted to New York City.  The child split her time equally between her parents' homes.

The parties separated on December 31, 1990.  Mother first filed for custody in New York City, but the parties agreed that Virginia was the more appropriate forum.  On February 8, 1991, they signed a Settlement Agreement providing for joint custody and giving the child essentially equal time with both parents.  The Circuit Court of the City of Alexandria (trial court) incorporated this agreement into a final divorce decree dated February 11, 1992.  The terms of the custody agreement required the child to spend two weeks with father and two weeks with mother on an alternating basis.  The trial court found that in this "unique" situation, the child had a "fully established home in both Virginia and in New York, with a separate set of friends, social activities, schooling, church, and recreational activities of the most comprehensive nature in both locations."

On June 16, 1993, father filed a petition and affidavit for modification of the custody decree because of his concern that mother was planning to relocate to Sweden with the child.  Father alleged that he had been advised "on competent authority by Swedish counsel" that the only way a Virginia court could maintain jurisdiction was to "provide for alternating but equal

2

time of no more than one school year, i.e. one year in Sweden and one year in the United States, with the <u>specific finding that the Father's domicile will remain the habitual residence of the child</u>."  (Emphasis added).  Father requested the following:

That for the foregoing reasons, none of which were contemplated at the time the last custody decree was entered and which constitute a substantial change in circumstances, the best interests of the child require that a modification decree be entered by this Court providing, at a minimum, that the parties alternate custodial residences with the minor child from school year to school year, with an equal division of remaining time, and with appropriate custodial visitation time while the child is with each parent, and that a finding be made that the Father's domicile shall be the child's habitual residence regardless of time which the child may be scheduled to spend with her mother in Sweden.

On June 23, 1993, the trial court scheduled a hearing on the merits.  Pending that hearing, the trial court ordered that the minor child's "habitual residence" was to be the residence of her father in Virginia, and that it had continuing and exclusive jurisdiction to decide all matters concerning the care and custody of the child.  The court also allowed mother to take the child with her to Sweden until three days prior to the date set for trial, but provided as follows:

That the failure of [mother] to return to the Commonwealth of Virginia . . . with the minor child . . . as required by the terms of this Decree shall constitute contempt of this Court Order and cause an immediate vesting of sole custody of the minor child of the parties in the Petitioner.

That [mother] is enjoined and prohibited

> from taking any action to change or modify
> this Decree or to seek custody of the minor
> child of the parties through the courts of
> Sweden or any other jurisdiction except the
> Circuit Court for the City of
> Alexandria . . . .

Both parties and their respective counsel agreed to the terms of the decree and endorsed the order with no objection.

At the ore tenus hearing on November 12, 1993, both parties were represented by counsel. Claes Renstrom, a Swedish domestic relations attorney, testified as an expert witness for father regarding the enforceability of the parties' custody agreement by a Swedish court. He testified that:

> [t]he important thing regarding this whole
> case from the Swedish point of view is the
> question of whether [the child] will acquire
> habitual residence, or domicile, which . . .
> in . . . Swedish legal terms is called
> hemvist (phonetic) in Sweden.
>
> If she has that, and if she requires [sic]
> this, and let's call it domicile, or habitual
> residence, or whatever you like, . . . if she
> acquires that, then it is possible for Mrs.
> Johnson at every time to go to the Swedish
> Court, and ask to have sole custody of the
> child.

Following this hearing, the parties agreed to settle the issue of custody and a final consent order was entered on December 28, 1993. This order modified the custody terms of the divorce decree and outlined a new schedule for physical custody.[1] The

---

[1]Under the December 1993 modified custody agreement, the parties were to share joint legal custody and physical custody would alternate. Mother had physical custody from August 20, 1993 to August 19, 1995, and father's physical custody was scheduled from August 20, 1995 to August 19, 1997. Each parent was to have vacation visitation during the term of the other's

trial court also made the following findings:

> [T]his Court hereby expressly finds that it has continuing and exclusive jurisdiction to decide all matters relating to the care and custody of the minor child . . . ; and the Petitioner's residence in the Commonwealth of Virginia, United States of America, <u>and not Sweden</u>, shall constitute the place of residence for the purpose of all adjudications of custody and visitation of the said minor child; and, that the Courts of Sweden as well as all other courts anyplace in the world, shall <u>not</u> acquire jurisdiction over the custody of the child by reason of the Respondent's residence in the Country of Sweden, . . . .
>
> IT IS FURTHER ORDERED that neither party shall seek modification of this Order without prior leave of this Court and Notice to the other party.

Mother made no objection to this order and agreed to its provisions. Shortly thereafter, she relocated to Sweden and took the child with her. Visitation proceeded on schedule until early 1995.

In January 1995, mother, contrary to the December 28, 1993 consent order, filed for custody in the Solna District Court of Sweden. That court issued a "writ of summons" requiring father to appear to "reply to the points of claim and other submissions presented by" mother. Additionally, mother refused to cooperate with father's upcoming Easter visitation.

On March 20, 1995, father filed in the trial court a "motion

---

physical custody. The agreement also set out child support payments from father during mother's periods of physical custody and visitation.

for order finding defendant in violation of custody decree and wrongfully retaining child in violation of complainant's custodial rights."  Father alleged several violations of the express terms of the December 1993 consent order, including the fact that mother had instituted a court action in Sweden, that she had attempted to invoke the jurisdiction of the Swedish court over the custody issue, that she had refused all attempts by father to schedule his weeks of physical custody of the child, and that she had wrongfully retained the child.

On March 27, 1995, the trial court held a hearing on father's motion.  The hearing was continued "for the purpose of giving [mother] the opportunity to explain her conduct, obtain active representation of her interests, and inform the Court of any relevant and pertinent information."  Mother acknowledged notice and requested another continuance because she could not make travel arrangements or arrange for representation in such a short time.  On April 12, 1995, the court denied her request and issued an order finding mother in violation of the express terms of the December 1993 order and directing mother to relinquish custody to father to compensate him for the time she had wrongfully retained the child.[2]

---

[2]Two separate court systems in Sweden heard various claims and appeals between January 1995 and May 1996.  Mother first filed for custody in Sweden in the Solna District Court on January 25, 1995.  That court dismissed her claim on April 5, 1995, holding that the child was domiciled in Virginia.  Mother appealed to the Regular Appeals Court (Svea Hovratt), which reversed on September 7, 1995.

Father filed an application on March 14, 1995 for return of

On May 9, 1996, the Swedish Supreme Administrative Court (Regeringsratten) issued its decision finding that mother had not illegally retained the child and that the child's "hemvist" was in Sweden.[3] The court ruled that "[t]he requirements for transfer of Amanda to the USA on the basis of the enforcement act therefore do not exist. Anne Franzen Johnson's main request should therefore be granted."

the child under the Hague Convention. Both parties attended a hearing on the application in the County Administrative Court (Lansratten), which found the child's domicile to be Virginia and, on May 19, 1995, ordered her return. Mother appealed this order to the Administrative Appeals Court (Kammaratten), which reversed the order on June 19, 1995. Father filed a second application with the Lansratten, which, on October 6, 1995, again found that the child's domicile was Virginia and ordered her return. Mother appealed to the Kammaratten, which, on December 19, 1995, found that the child's domicile was Virginia and ordered the child's return scheduled for December 22, 1995. The Supreme Administrative Court (Regeringsratten) issued a stay on the return order on December 21, 1995, and reversed the return order on May 9, 1996, on the ground that the child's domicile was Sweden.

[3]The court explained its interpretation of the term "habitual residence" as follows:

> The term "habitual residence," which corresponds to "hemvist," is not defined in the Hague Convention either. In general, it may be said that consideration of the question of habitual residence under the Convention is primarily a matter of making an overall assessment of circumstances which may be observed objectively, such as the length of sojourn, existing social ties and other factors of a personal or occupational nature which may indicate a more permanent attachment to one country or the other. In the case of a small child, the habitual residence of person who has custody, and other family and social aspects, must be the decisive factors.

7

In July 1996, father filed a "motion for order of sole custody to be granted complainant together with other relief." Additionally, he filed an affidavit and a "petition for issuance of rule to show cause." On July 3, 1996, the trial court issued a rule to show cause against mother for contempt of the court's custody order. In August 1996, mother filed a "motion to dismiss or defer" in the trial court. Father filed a response and a cross-motion for sanctions against mother. After a hearing at which mother was represented by counsel, the trial court found mother to be "in willful, multiple, and continuing contempt of this Court's orders of December 28, 1993 and April 12, 1995." The court also directed mother to produce the child, ordered mother to pay a fine and father's attorney fees and related costs, terminated father's child support obligation, and granted sole and exclusive custody to father. In addition, the court reserved jurisdiction as necessary and enjoined mother from proceeding any further in the courts of Sweden with any aspect of visitation or custody.

## II. STANDARD OF REVIEW

In its deliberation concerning a child's welfare, including its determination of jurisdictional and enforcement issues, the trial court must make the child's best interests its primary concern. See Code § 20-124.2(B). See also Farley v. Farley, 9 Va. App. 326, 327-29, 387 S.E.2d 794, 795-96 (1990). "[T]rial courts are vested with broad discretion in making the decisions

8

necessary to guard and to foster a child's best interests." _Farley_, 9 Va. App. at 328, 387 S.E.2d at 795 (citing _Eichelberger v. Eichelberger_, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986)). "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion." _Farley_, 9 Va. App. at 328, 387 S.E.2d at 795 (citing _M.E.D. v. J.P.M._, 3 Va. App. 391, 398, 350 S.E.2d 215, 220 (1986)). "[W]e view the evidence and all reasonable inferences in the light most favorable to the prevailing party below." _Lutes v. Alexander_, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992) (citation omitted). "Where a trial court makes a determination which is adequately supported by the record, the determination must be affirmed." _Farley_, 9 Va. App. at 328, 387 S.E.2d at 796.

### III. JURISDICTION

Mother first argues that the trial court did not have jurisdiction to modify the December 1993 consent decree because the child's connections to Virginia had dissipated. In the alternative, she contends that the trial court erred in refusing to defer jurisdiction to the Swedish court as a more convenient forum, as the child's new home state, or as the site of a legitimately pending litigation. We hold that the trial court had continuing jurisdiction to enforce its own decree, and it did not abuse its discretion when it refused to defer jurisdiction to the Swedish court.

### Continuing Jurisdiction

9

A Virginia trial court has continuing jurisdiction over the
modification and enforcement of its decrees.

> The court may, from time to time . . . revise
> and alter [its] decree concerning the care,
> custody, and maintenance of the children and
> make a new decree concerning the same, as the
> circumstances of the parents and the benefit
> of the children may require.  The intentional
> withholding of visitation of a child from the
> other parent without just cause may
> constitute a material change of circumstances
> justifying a change of custody in the
> discretion of the court.

Code § 20-108.  See also Orlandi v. Orlandi, 23 Va. App. 21, 26,

473 S.E.2d 716, 718 (1996).  "The court shall have the continuing

authority and jurisdiction to make any additional orders

necessary to effectuate and enforce [custody and visitation

orders]."  Code § 20-124.2.

In the instant case, the trial court's consent decree of

December 1993 set out a schedule for shared custody and several

other provisions, including an agreement that neither party would

initiate related proceedings elsewhere without the permission of

the trial court.  Both parties agreed to be bound by these terms.

When mother filed for custody in Sweden in January 1995, the

Virginia trial court clearly had jurisdiction to consider this

violation and to enforce its ongoing decree.

Mother argues that the child's connections with Virginia

dissipated during the time she was in Sweden throughout 1994 and

thus rendered these provisions unenforceable.  This argument

ignores the fact that the child was located in Sweden pursuant to

10

the Virginia trial court's custody schedule, which allocated equal time to each of the parents. At no time did the child's "residence," as agreed to by the parties, change. The mere fact that mother received her scheduled time first under the order did not invalidate the remainder of the agreed-upon schedule or the other court-ordered provisions.

A party must obey an existing custody order until a modification order supersedes it. "[T]he custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law." Code § 20-135. Here, mother, who had consented to the custody order and schedule, denied father his court-ordered visitation and refused to return the child to Virginia, as the consent decree directed. These actions do not support her contention that she has acted "in good faith and in orderly fashion." Rather, they provide apt justification for the trial court's enforcement of its decree. To hold otherwise would allow any dissatisfied custody litigant to divest a court of its inherent power to enforce a valid order by simply taking the child to another jurisdiction. Such an outcome is not contemplated by either historical analysis or statutory authority.

### Inconvenient Forum

Mother next contends that even if the trial court had continuing jurisdiction to modify its existing custody decree, it

11

erred by failing to defer jurisdiction to Sweden as a more convenient forum under Code § 20-130. Mother has not demonstrated error or an abuse of discretion in the trial court's exercise of jurisdiction over this matter.

The Uniform Child Custody Jurisdiction Act (UCCJA) is a reflection of the public concern over the increasing numbers of multi-jurisdictional custody battles. Although the UCCJA explicitly applies to states and possessions of the United States, Code § 20-125(10), "[t]he general policies of this chapter extend to the international area." Code § 20-146. Of particular concern is the frequency of child-snatching and wrongful retention:

> Often, the parent who loses the custody fight is unwilling to accept the court's judgment. The dissatisfied parents will remove the child in an unguarded moment or fail to return him after a visit and will seek their luck in the court of a distant state where they hope to find – and often do find – a more sympathetic ear for their plea for custody.

> \* \* \* \* \* \* \*

> [T]he Virginia UCCJA was enacted to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; to promote cooperation with courts of other states . . . to discourage continuing controversies over child custody; to deter abductions and other unilateral removals of children undertaken to obtain custody awards; . . . and to promote the exchange of information and other forms of mutual assistance between courts of this state and those of other states concerned with the same child.

12

Middleton v. Middleton, 227 Va. 82, 91, 93, 314 S.E.2d 362, 366, 367 (1984) (citation omitted) (emphasis added).

Under Code § 20-130(A), "[a] court which has jurisdiction [to modify a decree] may decline to exercise its jurisdiction . . . if it finds that it is an inconvenient forum . . . and that a court of another state is a more appropriate forum." We will reverse the court's decision only upon a finding of abuse of discretion. See Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

When conducting a forum non conveniens analysis, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose, it may take into account the following factors, among others:

> 1. If another state is or recently was the child's home state;
> 2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
> 3. If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; and
> 4. If the parties have agreed on another forum which is no less appropriate.

Code § 20-130(C) (emphasis added).

Applying these factors, we find the trial court did not err in refusing to decline jurisdiction under the facts of this case. Virginia was and is the child's home state by agreement. Under the consent decree, father's residence in Virginia was the child's "place of residence for the purpose of all adjudications

13

of custody and visitation."  The parties agreed to this place of residence designation in anticipation of the child's stay in Sweden.  The child was to have equal time in both homes.  But for mother's wrongful retention, the child would have been returned to Virginia.  While the most recent evidence concerning the child's care was in Sweden, pursuant to the terms of the December 1993 consent decree, the evidence concerning the child's future care would develop in Virginia.  Finally, and of equal importance, the parties formally agreed that they intended that "Virginia shall be the only forum for adjudication of custody . . . matters."

Also relevant to the inquiry is the evidence in the record that the Swedish court system differs significantly from our own in matters of child custody.  Father's expert testified that Swedish courts do not grant joint custody and that "since there is no statute in the Swedish law [requiring recognition of foreign custody orders,] foreign custody decisions cannot in principle have any effect in Sweden whatsoever."  Additionally, in the instant case the Swedish appellate courts have refused to give comity to custody orders from the Virginia trial court.[4] This case differs from Middleton where the Supreme Court was "not

---

[4] "[T]he legal basis for recognizing the law of another country is the doctrine of comity . . . [which is] a rule of voluntary consent . . . defined as a courtesy or a willingness to grant a privilege, not as a matter of right but out of deference, respect, and good will."  In re S.M., 938 S.W.2d 910, 918-19 (Mo. App. 1997) (citations omitted).

14

reluctant to endorse an international deferral to the courts of England because 'Virginia's jurisprudence is deeply rooted in . . . the English system of justice.'"  227 Va. at 94, 314 S.E.2d at 368 (quoting Oehl v. Oehl, 221 Va. 618, 623, 272 S.E.2d 441, 444 (1980)).

Additionally, we "cannot overlook the child snatching aspect of the case."  Middleton, 227 Va. at 95, 314 S.E.2d at 369. Although mother had rightful custody in Sweden for a period of time, her subsequent wrongful retention equates with child snatching.  Id.  In Middleton, the father, in violation of a visitation agreement, refused to return his children.  Id.  Here mother violated a custody agreement by wrongfully retaining her child after her period of physical custody concluded.  In both cases, the violating parent gained "a tactical advantage by his conduct."  Id.  If we require the trial court to decline jurisdiction, "it will tend to encourage such conduct in the future, contrary to one of the principal purposes of the UCCJA." Id. at 96, 314 S.E.2d at 369.  Based on the factors enumerated in the UCCJA and the trial court's clear continuing jurisdiction to modify its initial consent decree, we cannot say that the trial court abused its discretion in refusing to defer jurisdiction to the Swedish court as a more convenient forum.

Mother also argues that the trial court should have deferred jurisdiction because Sweden was the child's new home state.[5]

---

[5]Under the UCCJA, a child's home state is "the state in which the child immediately preceding the time involved lived

15

Home state status is but one factor to consider in the forum non conveniens analysis. It is not determinative. In light of mother's agreement to designate Virginia as the proper forum for adjudication of custody matters and for making the initial determination of whether to defer, mother fails to establish an abuse of discretion.

In the instant case, during the time immediately preceding both the divorce decree and the consent decree of December 1993, the child spent short periods alternatively with each parent, resulting in an equal division of her time between Virginia and New York. At that time, the child had no single home state under the UCCJA definition. The trial court and the parties agreed that Virginia would be the child's home state, or habitual residence, for the purposes of all custody determinations, and that the parties would seek leave of that court before initiating custody proceedings elsewhere. This agreement became part of the December 1993 consent decree, a court order endorsed by both parties. Mother never objected to nor appealed either provision.[6]

with his parents, a parent, a person acting as parent, for at least six consecutive months. . . . Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." Code § 20-125.

[6]Under the general law provisions governing venue and inconvenient forum questions, and to which this issue may be analogized, we note that party agreements have historically been accorded great weight. See Code § 8.01-265. Venue can be conferred by consent or waiver. See Lester v. Rose, 130 S.E.2d 80 (1963).

We find unpersuasive her present contention that the child's presence in Sweden throughout 1994 supports a determination that Sweden has become the appropriate forum as the child's new "home state."  Virginia was the child's home state at the beginning of the proceedings, and father continues to reside in Virginia. Mother did not avail herself of the opportunity to appear before the trial court to argue a change in circumstances justifying the designation of an alternate home state.  The original agreement incorporated in the trial court's order contemplated that the trial court would consider deferral after a hearing. Consequently, mother is still bound by the trial court's determination of habitual residence and the procedural precondition to which she agreed.  See Code § 20-130(C)(4).  The trial court did not abuse its discretion in recognizing Virginia as the appropriate forum and refusing to defer to the Swedish court.[7]

---

[7]The record contains multiple references to the Hague Convention on the Civil Aspects of International Child Abduction.  The Hague Convention provides a forum for discussion and resolution of issues surrounding international child abduction and wrongful retention, and the United States and Sweden are both signatories.  Mother is the Swedish Ministry of Foreign Affairs representative to the Hague Convention for these issues.  She argues that the Hague Convention does not apply in this case because she did not wrongfully retain the child.  Her government has apparently adopted a supporting position:  that a child's custody may be litigated wherever the child resides.  The United States State Department has disagreed with this position on policy grounds.  The Hague Convention has not drafted a controlling definition of habitual residence.

Resolution of this international disagreement is not necessary to our present decision.  Mother appeals the issue of jurisdiction solely under the UCCJA, and we find Virginia law sufficient to enable us to reach a conclusion on these grounds.

Mother's final contention is that the trial court should have deferred jurisdiction to Sweden because a new proceeding was pending in Sweden. Code § 20-129 states that a court

>            shall not exercise its jurisdiction . . . if
>            at the time of filing the petition a
>            proceeding concerning the custody of the
>            child was pending in a court of another state
>            exercising jurisdiction substantially in
>            conformity with this chapter.

This contention is without merit.[8] The "priority in time" aspect of the UCCJA rests within the Commonwealth while the ongoing custody order remains in effect. Mother cannot circumvent the law by simply filing a new petition in Sweden.

The Swedish court based its jurisdiction solely on the child's presence in Sweden. However, by its very nature, the trial court's order contemplated an ongoing custody arrangement, and the "[p]hysical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine [her] custody." Code § 20-126(C). The agreement had specific provisions outlining the schedule for alternating physical custody, summer and vacation visitation, travel arrangements, and schooling. The child's presence in Sweden until January 25, 1995 was pursuant to a valid Virginia order, and the child's continuing presence after January 25, 1995 was the result of mother's wrongful retention of

---

[8]This case is distinguishable from the situation in D'Agnese v. D'Agnese, 22 Va. App. 147, 156, 468 S.E.2d 140, 144 (1996), where the court found "that the Illinois court had obtained emergency jurisdiction," because the mother took the children out of state to protect them from abuse. There is no emergency exception applicable here.

18

the child in defiance of the trial court's order. Wrongful retention does not confer "jurisdiction substantially in conformity with this chapter" and would not effectuate the requirements of Code § 20-129. Moreover, since the Swedish court refused to grant comity to the trial court's order, requiring the trial court to defer jurisdiction would be unreasonable and would undermine the purposes of the UCCJA.[9]

## IV. CONTEMPT

Mother also asserts that the trial court erred in finding her in contempt and granting sole custody to father in August 1996. Mother argues that her actions did not rise to the level of contempt because she did not abduct the child, but sought only modification of the trial court's December 1993 order. She contends that "[t]he fact that she violated an order of the Circuit Court prohibiting her from doing this is hardly

---

[9]Mother also argues that the trial court erred in finding that she had waived her right to seek modification of the custody agreement in a foreign court. Mother signed a consent decree in which she agreed that "Virginia shall be the only forum for the adjudication of custody or visitation matters . . . now or in the future;" and "neither party shall seek modification of this Order without prior leave of this Court." A consent decree "is a contract or agreement between the parties to the suit . . . and is binding unless secured by fraud or mistake." Orlandi v. Orlandi, 23 Va. App. 21, 26, 473 S.E.2d 716, 719 (1996) (citation omitted). Mother has not alleged either fraud or mistake in this case. Consequently, she is bound by the provisions of the decree which she dislikes, just as she was entitled to the benefit of the provisions granting her child support payments and the first term of physical custody. Under the decree, mother did not waive her right to any modification in a foreign court; she merely agreed she would not do what she did -- go to a Swedish court without obtaining prior leave from the trial court.

controlling" and that an objective examination, "free from clamorous invective and confusing onslaughts of character assassination," supports her position. She further argues that she should not be held in contempt for her failure to relinquish custody or respond to the trial court's order to show cause because she "could not come here without being liable to . . . federal felony prosecution" and she "would be a victim of [the Parental Kidnapping Prevention Act, 18 U.S.C. § 1204] the instant she set foot on these shores." We find no merit in either claim. The fact that mother chose to act in a manner that may give rise to criminal charges does not shield her contumacious behavior.[10]

The trial court's authority to enforce its consent decree includes the ability "to punish as contempt of court any willful failure of a party to comply with the provisions of the order." Code § 20-124.2. "A trial court has the authority to hold an offending party in contempt for acting in bad faith or for willful disobedience of its order." Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (citation omitted). "It is true that the inability of an alleged contemner, without fault on [her] part, to render obedience to an order of court, is a good defense to a charge of contempt." Laing v. Commonwealth,

---

[10]The underlying policy of Virginia's felony parental abduction statute, Code § 18.2-49.1, is similar to that of the Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A. See Foster-Zahid v. Commonwealth, 23 Va. App. 430, 437, 477 S.E.2d 759, 762 (1996) (mother convicted of felony parental abduction under Code § 18.2-49.1).

205 Va. 511, 514, 137 S.E.2d 896, 899 (1964) (citations omitted) (emphasis added). "But where an alleged contemner has voluntarily and contumaciously brought on [her]self disability to obey an order, [s]he cannot avail [her]self of a plea of inability to obey as a defense to the charge of contempt." Id. at 515, 137 S.E.2d at 899.

Mother has demonstrated a willful and continuing failure to comply with the trial court's orders of December 1993 and April 1995, provisions she agreed to and used to her advantage. Further, she continues to deny father contact and wrongfully retains the child. If she disagreed with the procedural precondition that she obtain leave of court before initiating modification proceedings elsewhere, or disagreed with any other terms of the December 1993 order, her available remedies included refusing to sign the consent decree and appeal. Instead, she used the agreement to remove the child from the United States. Her refusal to comply with terms to which she agreed and her disregard for the trial court's authority define contumacious behavior.

Mother's contention that fear of a federal kidnapping prosecution excuses her failure to appear and shields her from a finding of contempt has no merit. Her own behavior placed her in that position. Mother has disregarded the trial court's orders of December 1993 and April 1995 and continues to do so. "When one shows by [her] conduct a deliberate and studied effort to

21

disobey a valid order of a court, [s]he subjects [her]self to punishment for contempt." Laing, 205 Va. at 515, 137 S.E.2d at 899.

For the foregoing reasons, we affirm the trial court's August 9, 1996 change of custody, finding of contempt, imposition of fines, and award of father's costs and fees. Additionally, we remand for an award of further costs and counsel fees incurred by father in this appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 479 S.E.2d 98 (1996).

Affirmed and remanded.