RENDERED: FEBRUARY 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1128-MR

YITING WU
APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 21-CI-500046

CHUN-HSIEN WU
APPELLEE

OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Yiting Wu ("Mother") appeals from the Jefferson Family

Court's granting Chun-Hsien Wu ("Father") sole custody of the parties' minor

child ("Child"), holding Mother in contempt, denying Mother's motions to stay the

proceedings, and denying Mother's request for the family court to decline to

exercise jurisdiction based on Kentucky being an inconvenient forum. We vacate

the family court's custody order, affirm its other rulings, and remand for further

proceedings in conformity with this Opinion.

## FACTS

Mother and Father married in 2016. Both are originally from Taiwan. Their child was born in 2018. The family had been living in Kentucky since around the time of Child's birth.

In December 2020, Father and Child traveled to Taiwan together. According to a letter typed in English and signed by Mother (and Father), Mother consented to Child traveling to Taiwan with Father. The letter stated both parents planned to have Child "stay and visit relatives in Taiwan until the COVID cases drop in US and vaccine of COVID 19 is widely available."

Mother arrived in Taiwan about a week after Father and Child. She and Father each stayed at their respective relatives' homes. Child spent time at both parties' relatives' homes before Father returned to Kentucky in January 2021.

A few days after arriving in Kentucky, Father filed a petition for divorce in Jefferson Family Court. He requested sole custody of Child.

A few weeks later, Mother filed her response to the divorce petition. She alleged that Father had also filed a divorce action in Taiwan and that mediation in Taiwan was scheduled for that spring.

In late April 2021, Father filed a motion to require Mother to make Child available for return to Kentucky. His motion was accompanied by an affidavit. He stated in the affidavit that he had filed a divorce action in Taiwan on

the advice of counsel and that mediation had not resulted in an agreement. Father also averred to concerns with Child living with Mother at her parents' house.

Mother filed a response, requesting denial of Father's motion. She also requested that the family court dismiss or stay the proceeding. She claimed that the family court lacked jurisdiction over the case and that the family court should refuse to exercise any jurisdiction invoked through unconscionable conduct by Father. She alleged Father engaged in forum shopping by trying litigation in both Kentucky and Taiwan courts to see which would be more favorable to him. She also argued Taiwan was the most appropriate forum to litigate custody.

Father replied, arguing Kentucky was the most appropriate forum. But he also admitted he had filed an action in Taiwan as well, stating Taiwan was not a party to the Hague Convention on the Civil Aspects of International Parental Child Abduction so counsel advised him to file an action in Taiwan. He denied engaging in forum shopping.

Father also submitted into the record documents regarding the Taiwan divorce action. Based on these documents,[1] Father had filed a divorce action in Taiwan in late January 2021, but the Taiwan divorce action was dismissed upon Father's request in June 2021.

---

[1] Neither party has challenged the accuracy of the translation of Taiwanese court documents.

Mother argued in briefs to the family court that Father had distorted Taiwanese law. She also claimed that Taiwanese and American courts historically enforced each other's decisions. She also pointed out that Father had filed the divorce action in Taiwan, but asserted he dismissed that action because he perceived he could obtain more favorable results outside Taiwan.

In September 2021, the Jefferson Family Court entered an order stating it had jurisdiction over the parties' custody dispute. It found both parents and Child were residents of Kentucky and had lived in Kentucky for at least six months when the action was filed. The court also noted the family had gone to Taiwan in December 2020 to visit family. It further noted that Father had filed a divorce action in Taiwan several days after filing the Kentucky divorce action, but that the Taiwan divorce action had been dismissed. It determined that the dismissed Taiwanese action, which had been filed after the Jefferson Family Court action, did not affect the Jefferson Family Court's jurisdiction. The family court concluded it had jurisdiction over the divorce action and the custody dispute.

Father again filed a motion for return of the Child. He alleged his video chats with Child had become infrequent, Child was not receiving needed speech therapy, and Child was losing his ability to speak English.

Mother responded, disputing Father's assertions that Child was endangered or at risk of harm in Taiwan. She also pointed out the parties had

-4-

purchased a one-way ticket for Child to Taiwan.  She claimed Taiwan was the most appropriate forum to litigate custody, and she noted that a new divorce action – which she had filed – was pending in Taiwan.  She asserted the family court must communicate with the Taiwanese court.  She also alleged she had been subjected to domestic violence by Father in Kentucky and argued her leaving Kentucky should not be held against her.  She again requested that the family court dismiss or stay the proceeding before it.

In early 2022, the family court entered orders requiring video visitation calls between Father and Child with directions about how they were to be conducted and prohibiting the parties from disparaging one another in Child's presence.  Father filed a motion to hold Mother in contempt for allegedly disobeying these orders.

After an evidentiary hearing on Father's motion for Child's return, the family court found the parties had agreed for Child to remain in Taiwan with Mother until the COVID pandemic abated or a vaccine became widely available.  It further found those conditions had been met.  So, in April 2022, the family court ordered that Mother must return Child to the United States immediately with the parties sharing travel expenses.

In this same order, the family court noted a Taiwanese court ordered Child could not leave Taiwan without Mother's consent. The family court stated it was unclear if the court in Taiwan was aware of the Kentucky court action.

A few weeks later, Father filed a second contempt motion, alleging Mother failed to comply with the family court's order requiring her to return Child to Kentucky. He also requested temporary custody. The family court granted Father temporary custody in late May 2022.

Following a hearing on the first contempt motion, the family court entered an order in July 2022 finding Mother in contempt for failing to comply with its orders regarding video visitation and prohibiting the parties from disparaging one another in Child's presence. In addition to finding Mother disparaged Father in front of Child, the family court found that Mother failed to facilitate some scheduled video calls and did not allow meaningful contact on other occasions by failing to assist Child with the phone or having his face masked during video visits.

Meanwhile, the family court scheduled a separate hearing for mid-August 2022 on the second contempt motion regarding failure to return the Child. The court was also scheduled to hear Father's request for a limited dissolution decree on the same date. According to Father, the family court was also to review temporary custody at that same hearing. We have not located in the record an

order scheduling a review of temporary custody. However, Father had requested Mother be held in contempt for failure to return the Child to "effectuate" the award of temporary custody.

In late July 2022, Mother filed motions to stay the proceedings and to declare Kentucky an inconvenient forum. The family court entered an order denying these motions without a hearing in early August 2022.

During the scheduled mid-August hearing on Father's contempt motion and request for a limited decree, Mother's counsel reminded the family court of Mother's request for it to stay the proceedings and/or to declare Kentucky an inconvenient forum. But the family court stated that it would not be granting any motions which would impede Child's immediate return to Kentucky. According to Mother, the family court never held a hearing on her motions to stay the proceedings or to declare Kentucky an inconvenient forum.

During the August 2022 hearing, the family court heard the testimony of Mother and Father with the aid of an interpreter approved by the Administrative Office of the Courts (AOC).[2] During the hearing, Father's counsel argued the family court would need to enter a final custody order for its orders to be enforced in Taiwan. Mother's counsel objected to the family court ruling on custody then,

_____

[2] Neither party has raised any alleged errors concerning the interpretation services provided.

-7-

asserting lack of proper notice. But Father's counsel argued the request to review temporary custody gave notice of a request to decide permanent custody.

Following the hearing, the family court entered a limited dissolution decree with supporting findings of facts and conclusions of law. It also entered a separate order finding Mother in contempt and awarding Father sole custody of Child. It found Child was at risk in Mother's care and Mother had no intention of allowing Father to have any relationship with Child. Both the limited dissolution decree and the other order state they are final and appealable and there is no just reason for delay.

Mother filed a motion to alter, amend, or vacate. The family court denied this motion. Mother filed a timely appeal. Further facts will be provided as necessary to resolve the issues on appeal.

**We Decline to Discuss Issues Not Substantively Argued in Briefs**

According to the introduction to Mother's brief, she appeals from orders in which the family court granted the limited dissolution decree and "fail[ed] to recuse" while resolving other issues. However, Mother does not substantively address with citations to authority any allegations of error about the family court's granting the limited dissolution decree or declining to recuse in her appellate brief argument. Thus, we need not further address any issues in these regards. "It is not our function as an appellate court to research and construct a

party's legal arguments[.]" *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005). Instead, we address solely those issues raised with citations to supporting authority in the argument portion of her brief.

**We Decline to Impose Sanctions, but We Point Out Violations of Appellate Briefing Rules for Future Guidance**

Though we decline to exercise our discretion to impose any sanctions,[3] we point out a few concerns about compliance with our appellate briefing rules before we address the merits of appellate issues.

First, we note that the index to the appendix to the appellant brief fails to state where in the record the items contained in the appendix may be found. *See* RAP 32(E)(1)(d) ("The index shall set forth where each document may be found in the record.").

Furthermore, the appendix also contains a family court order entered after the filing of the notice of appeal which therefore is not contained in the record on appeal. *See* October 10, 2022, family court order in appendix to appellant brief. The notice of appeal was filed September 21, 2022, and the record on appeal provided to us does not contain the October 2022 order appended to the appellant

---

[3] *See* Kentucky Rules of Appellate Procedure (RAP) 31(H)(3); *Strong v. Gary*, 673 S.W.3d 77, 79 (Ky. App. 2023) ("this Court also has the discretion to decline to exercise any of the options listed in RAP 31(H)(3).").

brief.  *See* RAP 32(E)(1)(b) ("The appendix may contain papers or exhibits in the **appellate record** . . . .") (emphasis added).  *See also* RAP 32(E)(1)(c) ("Except for matters of which the appellate court may take judicial notice, materials and documents not included in the record shall not be introduced or used as exhibits in support of briefs.").

Lastly, though the appellant brief contains preservation statements, *see* RAP 32(A)(4), better practice would be to cite to the record to specifically show where the appellant raised the issue(s) and argued to the trial court the reason(s) why the issue(s) should be resolved in a different manner.  However, we recognize that perhaps the wording of some authority may have led Mother to state the issue was preserved with a simple citation to the orders in which the family court ruled on the issues argued on appeal.  *See G. P. v. Cabinet for Health and Family Services*, 572 S.W.3d 484, 490 (Ky. App. 2019) (indicating the purpose of appellate briefing rules requiring a preservation statement is to make sure the trial court had an opportunity to rule on the matter at issue).

Even though RAP 32(A)(4) requires that an appellant identify how an issue was preserved for review and in what manner, this rule does not explicitly state what we mean by an issue being preserved for review.  To be clear, an appellant should identify how he/she raised the issue to the trial court (with pinpoint citations to the record) and which specific arguments he/she made to the

trial court to avoid raising a "new theory of error" on appeal. *See G.P.*, 572 S.W.3d at 489-90.

Based on our review of the record, Mother preserved the issues she argues on appeal in written or oral arguments to the family court. But we advise counsel to identify if, how, and where in the record an appellant has raised the arguments asserted on appeal to the trial court in future appellate briefs – rather than simply identifying where the trial court ruled on an issue in its written orders.

Next, we address the merits of clearly raised appellate issues – beginning with the questions of whether the family court should have stayed the proceedings or declared Kentucky an inconvenient forum before addressing its custody and contempt rulings.

**No Due Process Violation in Family Court's Denial of Stay and Not Finding Kentucky to be an Inconvenient Forum**

In Mother's view, the family court denied her a hearing on her requests for a stay and for Kentucky to be declared an inconvenient forum. She argues a due process violation resulted. We disagree.

Mother contends the family court summarily denied her motions for a stay and for Kentucky to be declared an inconvenient forum at the beginning of the August 2022 hearing. According to her, the family court ruled on these matters without a hearing or permitting any evidence. But she fails to address the family

-11-

court's having previously resolved challenges to its jurisdiction and previously denying prior requests to dismiss or stay the proceedings.

Mother alludes to the family court's declaring it would deny any motions that would have the effect of delaying Child's return to the United States. Mother's counsel argued for the stay and the inconvenient forum declaration at the August 2022 hearing. But the family court made clear that such arguments had been previously raised and rejected and further suggested that repeated argument on these matters was not an optimal use of the limited hearing time scheduled. Furthermore, the family court stated evidence should only be presented at the hearing regarding the request for a limited decree and contempt – the matters noted in its scheduling orders.

Nonetheless, the family court had reviewed documents filed by Mother regarding such matters as the Taiwanese court proceedings and Mother was only discouraged, not prevented, from making arguments about her requests for a stay or dismissal of the proceeding. Furthermore, Mother has not identified any type of evidence which she wished to present at the hearing on these matters but which the family court did not allow her to present.

And clearly the family court was aware of evidence of court proceedings in Taiwan, which it previously noted had been filed after the Kentucky proceeding and had been dismissed before its September 2021 order determining

that it had jurisdiction over this case. Written court documents from Taiwan with translations were filed in the record. And testimony was presented at the August 2022 hearing about the Taiwanese court proceedings as well as the parties' dual citizenship, their being from Taiwan and having family there, and the circumstances of Child staying in Taiwan with Mother from January 2021 through the August 2022 hearing date.

In short, though the family court denied Mother's request for a stay or for inconvenient forum relief and indicated arguments on these requests would be futile at the hearing, the record shows she was given an opportunity to be heard on these matters and that the parties were allowed to present evidence relating to these matters before the family court ruled on these matters. Therefore, we conclude Mother was not deprived of due process in these regards. *See Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015) ("a party has a meaningful opportunity to be heard where the trial court allows each party to present evidence and give sworn testimony before making a decision.").

Having concluded that Mother had a sufficient opportunity to be heard on these matters, we next address the merits of the family court's denial of the request for a stay and for a declaration that Kentucky was an inconvenient forum. Both issues are questions of law requiring statutory interpretation, which we review *de novo*. *Seeger v. Lanham*, 542 S.W.3d 286, 290 (Ky. 2018). However,

we review the family court's underlying factual findings for clear error – meaning we cannot disturb such factual findings so long as they are supported by substantial evidence. CR[4] 52.01; *Turner v. Turner*, 672 S.W.3d 43, 50-51 (Ky. App. 2023).

**No Error in Denial of Stay of Proceedings Pursuant to KRS[5] 403.832**

Mother argues the family court should have stayed the proceeding due to other court proceedings filed by the parties in Taiwan. Mother's argument is based on provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) adopted at KRS 403.800 through KRS 403.880.

As Mother points out, KRS 403.806 (International application) calls for treating court custody determinations from other countries the same as those from other states in the United States under some circumstances:

> (1) A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying Articles 1 and 2.[6]

> (2) Except as otherwise provided in subsection (3) of this section, a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of KRS

---

[4] Kentucky Rules of Civil Procedure.

[5] Kentucky Revised Statutes.

[6] Article 1 (general provisions) of the UCCJEA appears at KRS 403.800 to KRS 403.820. Article 2 (jurisdiction) is at KRS 403.822 to KRS 403.840. Article 3 (enforcement) is at KRS 403.842 to KRS 403.874. Article 4 (miscellaneous provisions) is at KRS 403.876 to KRS 403.880.

403.800 to 403.880 shall be recognized and enforced under Article 3.

(3) A court of this state need not apply KRS 403.800 to 403.880 if the child custody law of a foreign country violates fundamental principles of human rights.

The family court had previously determined that it had jurisdiction as the "home state," *see* KRS 403.822, in its September 2021 order – despite noting that Father had filed a Taiwanese divorce and custody action several days after filing the Kentucky action but had dismissed the Taiwanese action in June 2021.

Mother argues the family court erred in summarily denying the request to stay the proceedings in the early August 2022 order and she argues she raised KRS 403.832 for the first time shortly beforehand. (She had raised KRS 403.836[7] and KRS 403.834 previously). But she contends the family court failed to adequately address her KRS 403.832 argument.

KRS 403.832 provides in pertinent part:

(1) Except as otherwise provided in KRS 403.828,[8] a court of this state shall not exercise jurisdiction under Article 2 if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with KRS 403.800 to 403.880, unless the proceeding has been

---

[7] KRS 403.836 addresses when a court may decline to exercise jurisdiction "because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct[.]"

[8] KRS 403.828 concerns temporary emergency jurisdiction and neither party has argued its applicability to the instant case.

terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under KRS 403.834.

(2) Except as otherwise provided in KRS 403.828, a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to KRS 403.828. If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with KRS 403.800 to 403.880, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with KRS 403.800 to 403.880 does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.

KRS 403.832 only provides that a Kentucky court shall not exercise jurisdiction if there was a qualifying child custody proceeding in another jurisdiction pending **before** the commencement of the Kentucky proceeding. But it is undisputed that Father filed the instant action for marital dissolution and for child custody in Kentucky before any child custody proceeding in Taiwan was filed. Thus, the family court was not required to decline to exercise its jurisdiction under KRS 403.832(1).

As for when a stay is required, KRS 403.832(2) only requires a stay of proceedings and communication with the other court if "a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with KRS 403.800 to 403.880" (the UCCJEA).

-16-

Mother argues that Taiwan entered the first order, following a hearing, about child custody. But having examined the translated Taiwanese court order in the record, it clearly does not resolve which party has custody of Child. Instead, this Taiwanese court order simply provides that Child cannot leave Taiwan without Mother's consent or accompaniment.

While a child custody proceeding had been commenced in Taiwan, it is undisputed that the Kentucky child custody proceeding was filed first and that the parties and Child had lived in Kentucky for more than six months prior to returning to Taiwan. Thus, there was no error in the family court's finding Kentucky to have home state jurisdiction. And other than noting the fact of a pending child custody proceeding in Taiwan and Child remaining in Taiwan since December 2020, Mother fails to point to evidence that the Taiwanese court had jurisdiction substantially in accordance with KRS 403.800 to 403.880. Thus, we discern no reversible error in the family court's denial of her request for a stay of the proceedings.

**No Error in Not Finding Kentucky an Inconvenient Forum Under Facts Here**

Next, we address Mother's contention that the family court erred in not finding Kentucky to be an inconvenient forum pursuant to KRS 403.834.

As KRS 403.834(1) states the court **may** decline to exercise its jurisdiction based on its finding the forum to be inconvenient and another state to

-17-

offer a more appropriate forum, the decision is obviously subject to the court's discretion and thus we review its decision for abuse of discretion. *See also Williams v. Frymire*, 377 S.W.3d 579, 589 (Ky. App. 2012) ("Based upon the factors set forth in KRS 403.834(2), we hold that the family court did not abuse its discretion in retaining jurisdiction over this case.").

Despite the family court judge's oral statements at the August 2022 hearing indicating that the inconvenient forum argument had been addressed before and would not succeed, the family court engaged in some written analysis about KRS 403.834's application to this case. The family court noted its earlier order finding home state jurisdiction under KRS 403.822(1)(a) and further found: "The child was temporarily absent from Kentucky by agreement of the parties, due to unprecedented circumstance of a global health pandemic. There was no agreement or mutual intent to change the child's residence."

The court then quoted KRS 403.834 and noted several factors listed for consideration of whether the forum was convenient. And it discussed at least one factor (domestic violence) in its findings of fact, noting Mother alleged abuse from Father but had not contacted police or sought protective orders. The court also noted Father's conflicting testimony, and it found Father's testimony more credible than Mother's.

The family court further stated that KRS 403.834 did not apply to foreign countries' courts and that it could not relinquish its jurisdiction to any foreign country's court – statements which may appear to conflict with KRS 403.806. Nonetheless, it is not necessary for us to resolve whether KRS 403.834 could ever apply to an international child custody case.

Regardless of whether a Kentucky court could ever relinquish jurisdiction to a foreign country's court, the family court stated it was not inclined to exercise its discretion to relinquish jurisdiction under KRS 403.834. And the family court explained why it would not exercise its jurisdiction to relinquish jurisdiction: "The parties' child has been absent from Kentucky for about 18 months, only because Ms. Wu [Mother] has unilaterally withheld the child in contravention of numerous court orders. This Court is not inclined to allow Ms. Wu to subvert the Court's jurisdiction through contemptuous behavior."

We recognize that perhaps a different factfinder may have perceived the evidence differently, such as perhaps finding Mother's testimony more credible than Father's. However, the family court's assessment of the weight and credibility of the evidence and its resolution of conflicting evidence must be reviewed with deference given its unique opportunity to directly observe the parties' testimony and we can only disturb factual findings not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). The

family court's factual findings are supported by substantial evidence so we will not disturb them.

Furthermore, applying the factual findings made by the family court and supported by substantial evidence, the family court did not abuse its discretion in declining to yield jurisdiction to avoid rewarding what it perceived to be Mother's wrongful retention of Child and contumacious conduct. *See Johnson v. Johnson*, 26 Va. App. 135, 147-48, 493 S.E.2d 668, 674 (1997) (concluding trial court did not abuse its discretion in not yielding its continuing child custody jurisdiction to Swedish courts despite arguments that more evidence would be available in Sweden where the child had been wrongfully retained after the end of a scheduled parental timesharing period: "While the most recent evidence concerning the child's care was in Sweden, pursuant to the terms of the December 1993 consent decree, the evidence concerning the child's future care would develop in Virginia.").

While the present case does not involve a prior custody decree by the family court nor a consent decree as in *Johnson*, there was nonetheless substantial evidence to support the family court's factual findings. And like the *Johnson* court, we discern no abuse of discretion in the family court's not yielding jurisdiction to another country to avoid rewarding "child-snatching" behavior. *See id*. at 148-49. Furthermore, the fact of a later-filed custody proceeding in the

foreign country does not necessarily call for yielding jurisdiction to the foreign country's courts as "Mother cannot circumvent the law by simply filing a new petition" in the other country's court. *See id*. at 151.

As Father argues in his brief, "While the most recent evidence regarding [Child's] care is in Taiwan, if the trial court's orders are complied with, the evidence concerning the child's future care would develop in Kentucky." And as Father points out, there is already substantial evidence available in Kentucky about Child's receiving medical care here and from persons who knew Child and his parents as a family unit here.

We discern no reversible error in the family court's not declaring Kentucky to be an inconvenient forum and not yielding jurisdiction to the Taiwan court under the facts here. Next, we review the contempt ruling.

**No Reversible Error in Family Court Finding Mother to be in Contempt**

Following recent Kentucky Supreme Court precedent, we review the family court's exercise of its contempt power for abuse of discretion, but its underlying factual findings for clear error. *See Crandell v. Cabinet for Health and Family Services ex rel. Dilke*, 642 S.W.3d 686, 689 (Ky. 2022) (stating contempt orders are reviewed for abuse of discretion but underlying factual findings are reviewed under the clear error standard).

The family court alluded to KRS 403.240(2): "The failure of either party, without good cause, to comply with a provision of a decree or temporary order or injunction, including a provision with respect to visitation or child support shall constitute contempt of court, and the court shall remedy the failure to comply."

The family court found that Mother willfully and without good cause failed to comply with its orders requiring her to return Child to the United States. It further found that Mother's allegations Father had abused her were without merit – a finding based on credibility assessments and supported by substantial evidence including Mother's admission she had not contacted police or sought a protective order despite calling a women's center with abuse allegations.

The family court found Mother in contempt and stated she could purge herself of contempt by bringing Child to Father's mother within seven days so that Child could return to the United States. It further stated Mother could be incarcerated for up to 180 days if she failed to purge herself of contempt.

On appeal, Mother argues there was no proof of improvement in the COVID situation in late April 2021 (when Father first requested an order for Child's return) as compared to December 2020 (when Child arrived in Taiwan).[9]

---

[9] Mother's counsel argued in writing to the family court that COVID had not disappeared by the spring of 2021.

But despite any lack of evidence of improvement in COVID rates, Father points out in his brief that we may take judicial notice that COVID vaccination was becoming increasingly available in late April 2021 compared to December 2020 and even more so when the family court ordered Child's return in April 2022.

Certainly, the agreement stated in the letter indicated that Child could return to the United States when COVID cases dropped[10] **or** when a vaccine was widely available. And regardless of any disputes about whether the COVID situation in the United States was "better" in the spring of 2021 than in December 2020, COVID vaccination was certainly available to large portions of the population by April 2022 when the family court ordered Child's return.[11] This was a matter of public knowledge. Thus, there is substantial evidence to support the

---

[10] Perhaps the letter does not set forth in detail exactly what is meant by COVID cases dropping or COVID being "better." (*See* Appellant brief, page 10). Does the agreement call for Child's return based on a reduction in the number of infected individuals in a certain area or a difference in test positivity rates or perhaps better treatment options and does such information have to come from a particular source, such as the Centers for Disease Control? Nonetheless, regardless of any lack of clarity about such details for resolving whether COVID was "better" or cases had dropped at any place or time, the written agreement also indicated Child should be returned to the United States when a COVID vaccine became widely available. We further note that the family court did not issue orders for Child's return until the spring of 2022.

[11] Based on our review of the record and the briefs, Mother has not argued to the trial court or to this Court that the agreement required that a COVID vaccine be widely available to children of Child's age before Child could be returned to the United States. Instead, Mother's counsel generally disputed whether the COVID situation had improved. And Mother indicated in her testimony that she did not actually agree to return Child for any COVID-related reasons since she said she did not understand anything in the letter other than the grant of permission for Father to travel with Child without her.

family court's finding that at least one alternative condition for Child's return – widespread availability of a COVID vaccine – was met.[12]

Of course, we also recognize that Mother testified she was unable to understand the COVID provisions in the letter due to limited English proficiency – suggesting she denied agreement to these provisions at all. But the family court expressly found Mother's testimony less than credible, especially about Mother's alleged limited English proficiency. The family court noted that Mother had earned an advanced degree at an American university and had obtained United States citizenship – both requiring some degree of English proficiency. Regardless of whether another factfinder would agree with the family court's assessment of Mother's credibility or English proficiency, we defer to the family court's assessment of credibility and resolution of conflicting evidence and must affirm factual findings supported by substantial evidence. *See Asente*, 110 S.W.3d at 354.

In sum, there is substantial evidence to support the family court's finding that the parties had an agreement for Child's return upon the widespread

---

[12] We express no opinion on whether substantial evidence supported a finding that the COVID situation in the United States had substantially improved by the time Father filed a motion for Child's return in the spring of 2021 or by the time the family court issued orders for Child's return a year later. Instead, since the agreement alternatively called for Child's return when a COVID vaccine became widely available, we affirm the family court's finding that Child's return was required under the agreement due to a COVID vaccine being widely available by the time the family court issued the order for Child's return in April 2022.

availability of a COVID vaccine and that Mother violated this agreement by refusing to return Child after the vaccine became widely available.

Furthermore, regardless of exactly what the parties' agreement entailed or whether Mother violated the agreement by not sending Child back earlier, the family court had ordered Child to be returned to the United States in April 2022 and Child had still not been returned by the August 2022 hearing. Thus, Mother did not comply with the family court order for Child's return.

Mother claims on appeal that her violation of the family court's order was not willful due to impossibility of compliance because Child's leaving Taiwan was prohibited by the Taiwanese court's order. She cites authority holding "a party cannot be punished for contempt for her failure to perform an act which is impossible." *See Crowder v. Rearden*, 296 S.W.3d 445, 450 (Ky. App. 2009).

However, as the family court and Father noted, the Taiwanese court order clearly stated that Child could not leave Taiwan **unless Mother consented to his leaving or accompanied him**.[13] Thus, the Taiwanese court order did not

---

[13] Again, we note that no one has disputed the accuracy of the translation of Taiwanese court orders in the record. Father's brief quotes a portion of a Taiwanese court order stating "it is urgent and necessary to prohibit the minor child from leaving the country." (R, p. 174, 187). However, this appears to be a reiteration of Mother's arguments in her divorce petition. The Taiwanese court noted the parties were still litigating a divorce action. It stated there was already a "temporary disposition" which it deemed insufficient to "ensure the urgency of the case" before stating: "It is also ordered that minor children [sic] should be allowed to leave the country or go to sea only with the consent of the petitioner [Mother] (written consent is required) or accompanied by the petitioner, which should be sufficient to ensure the enforcement of the decision afterwards." (R, p. 175, 188).

categorically prohibit Child leaving Taiwan but only prohibited Child's leaving Taiwan without Mother's consent or accompaniment. We reject Mother's contention on appeal that she should be excused from complying with the family court's order due to impossibility. It was not impossible for Child to leave Taiwan under the Taiwanese court order; Mother simply had to consent to Child's leaving Taiwan or accompany him when Child traveled outside Taiwan.

The family court's factual findings underlying its contempt finding were not clearly erroneous. And especially given that the family court provided Mother an opportunity to purge herself from contempt by taking Child to his paternal grandmother for transport to the United States, we discern no abuse of discretion in its contempt order. Thus, we affirm its contempt order.

Next, we address the family court's award of sole custody to Father.

**Family Court's Award of Permanent Sole Custody to Father is Vacated Due to Lack of Notice of Hearing on Permanent Custody**

Despite our affirming the family court's other rulings, we are compelled to vacate its award of sole custody to Father due to lack of notice. Mother's counsel orally objected to the family court's deciding custody at the August 2022 hearing due to lack of notice.

Furthermore, as Mother's brief accurately points out, the family court orally discussed at the beginning of the hearing that the hearing was set for purposes of issuing a limited dissolution decree and resolving Father's motion to

-26-

hold Mother in contempt for failure to comply with the order for Child's return. The family court initially stated that it would not be changing custody that day; rather, following Child's return to the United States, it could then finally rule on custody. However, perhaps because Father's attorney asserted that only a final custody decree could be enforced in Taiwan to allow Child's return to the United States,[14] the family court ultimately awarded Father sole custody.

Mother's counsel also accurately points out that Father had not filed a written motion requesting a final custody hearing; instead, he simply requested temporary custody, which had been granted to him. Also, the family court's written scheduling orders indicated only that it would be hearing Father's request for a limited dissolution decree and his second motion for contempt (related to Mother's disobeying orders to return Child).

Father contends in his brief that a review of temporary custody was also to occur on that same scheduled August 2022 hearing date and that a review of temporary custody connotes consideration of permanent custody. Based on our review of the written record, Father had filed a motion requesting that Mother be

---

[14] Neither party has cited to or discussed any Taiwanese legal authority in their appellate briefs. We lack independent knowledge of Taiwanese legal authority or procedures and decline to research any point of Taiwanese law. In short, we construe no Taiwanese legal authority, and our Opinion does not depend on any other construction of Taiwanese law.

found in contempt for failing to return Child and indicated this was necessary "to effectuate the award of temporary custody" to Father.

Even if this motion called for a "review" of temporary custody, there is nothing in the written record to indicate that non-temporary custody would be heard on that same scheduled hearing date. We cannot simply accept Father's assertion that any scheduled review of **temporary** custody gives notice that the family court would be ruling on custody on a more permanent basis. Especially given one's constitutional interest in the custody and care of one's children, notice of a custody hearing is clearly required for a valid custody decree. *See London v. Collins*, 242 S.W.3d 351, 357 (Ky. App. 2007) (holding that though permanency order in dependency case might otherwise qualify as a custody decree, permanency order at issue was not a valid custody decree in part because parent was not given formal notice that the scheduled hearing was for purposes of resolving custody).[15]

Thus, we **VACATE** the family court's awarding sole custody to Father and remand for further proceedings in conformity with this Opinion. Upon

---

[15] The permanency order in *London* was also not deemed a custody decree due to lack of evidence on KRS 403.270(2) factors regarding the child's best interests, as well as lack of proper consideration of these factors by the court issuing the permanency order. *See id*. at 356-57. We need not reach any questions of whether the family court here adequately considered KRS 403.270(2) factors in resolving custody as the parties did not argue this matter in their appellate briefs and we vacate the custody ruling based on lack of proper notice. On remand, we expect that the parties will be provided an opportunity to offer evidence and argument on KRS 403.270(2) factors at a properly noticed custody hearing and that the family court will discuss all applicable KRS 403.270(2) factors in its custody decree.

remand, the family court may rule on custody only after conducting a properly noticed custody hearing.

Further issues or arguments raised in the parties' appellate briefs have been determined to lack merit or relevancy to our resolving this appeal.

## CONCLUSION

For the foregoing reasons, we **VACATE** the family court's award of sole custody to Father, **AFFIRM** its other rulings, and **REMAND** for further proceedings in conformity with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:

Zack McKee
Louisville, Kentucky

BRIEF FOR APPELLEE:

W. Bronson Howell
Louisville, Kentucky